## WILLIAM D. NUTT, EXECUTOR OF ALEXANDER HUNTER, DECEASED, PLAINTIFF IN ERROR, *v.* PHILIP H. MINOR.

Where a case is brought up to this court upon an alleged error in a demurrer to evidence, inasmuch as the prayer to the court below, was, that there was no evidence from which the jury could infer a certain promise; and this court is of opinion that the court below judged rightly in thinking that there was such evidence, the judgment of the court below must be affirmed.

This case was brought up by writ of error from the circuit court of the United States for the District of Columbia, holden in and for the county of Washington.

The facts are stated in the opinion of the court.

It was argued by *Mr. Davis* and *Mr. Bradley,* for the plaintiff in error, and by *Mr. Badger* and *Mr. Lawrence,* for the defendant.

Mr. Justice CATRON delivered the opinion of the court.

Minor sued Nutt as executor of Alexander Hunter, and sought to recover on a *quantum meruit* for services rendered as clerk for Hunter in the marshal's office for fourteen and a half years.

The defence is, that Minor entered on the service under a special agreement to receive four hundred dollars a year.

The bill of exceptions states, that " on the trial of this cause, the plaintiff, to maintain the issue on his part, gave evidence tending to prove that he had rendered the services mentioned in the declaration, during the period therein stated, and that the said services were faithful, valuable, and unremitting, during all the time aforesaid; and he further gave evidence by Daniel Minor, a competent witness, that the engagement under which the plaintiff commenced to serve as such clerk as aforesaid to the deceased, Hunter, was made verbally in the presence of the witness; that the witness was a surety in the official bond of the deceased, as marshal for the District of Columbia; that plaintiff is the brother of witness; that witness was the deputy marshal of Alexandria county from 1806 or 1807, down to 1826; and that the plaintiff was very familiar with the duties of clerk in the marshal's office, and that the said Hunter was wholly ignorant of the duties of said office; that the witness was desirous of having plaintiff employed as such clerk by said Hunter, and, with the plaintiff, went to the marshal's office and there met the said Hunter, and in said office, they there being present, they had a conversation about the employment of the plaintiff and the terms thereof; that witness told the said Hunter that he could find nobody who would suit the place better than the plaintiff; that Hunter said he did not know any thing about the emoluments of the office, or the value of the plaintiff's services, but he would be willing to give him $250 per annum; that witness said that was out of the question, that plaintiff could not pay his board with it; the witness then said he would give $150, if Hunter would give $250, making the salary $400 for the first year; that said Hunter said he was willing to do that; that plaintiff was dissatisfied; that witness, then and there continuing the conversation, in the presence of the said Hunter, and speaking in the same tone as in the previous part of the conversation, and standing near to the said Hunter as before, told the plaintiff that he must try and get along with the $400 for the first year, and that afterwards, when Hunter should ascertain the value of the services, he would pay him accordingly; that said Hunter made no comment on the last statement; that said plaintiff thereupon acquiesced, and entered upon the duties of said clerkship. And further proved by another witness, that during the said first year, the plaintiff complained to the witness of the insufficiency of the salary; that witness thereupon saw and had a conversation with Hunter on the subject; that he could not recollect the language of said Hunter, but it was to the effect that if he gave plaintiff more now he would waste it; and other remarks which he could not distinctly repeat, but all which left the clear impression on the

mind of the witness that after the said first year the plaintiff was to be better compensated; that the witness reported the conversation to the plaintiff. Another witness, Smith Minor, a brother of the plaintiff, deposed that the witness had a conversation with Hunter in the year 1843 or 1844, in which he told Hunter that the plaintiff had not been to see witness for ten years; that the plaintiff had given as a reason that he could not get enough money from said Hunter to hire a horse to ride to the country, where witness resided, in Fairfax county, Virginia. That said Hunter spoke in the highest terms of the plaintiff's services, and of his integrity and industry; said that he owed his fortune to the plaintiff, and that plaintiff had made him from 70 to $100,000, and other words to this effect; and said that he, Hunter, was keeping all he could back from the plaintiff for a rainy day, and to support him in his old age. And further proved by the evidence of Chief Judge CRANCH, of Marshal Wallach, Marshal Hoover, and John A. Smith, clerk, and others, that the plaintiff's services were well worth the amount claimed, (to wit, $800 per annum,) and by said ex-Marshal Wallach and Marshal Hoover, that they respectively paid plaintiff $1,000 per annum for similar services, and for the discharge of the same duties which he had rendered and discharged in the time of their said predecessor, Hunter. And further gave evidence tending to show that the said office of marshal, during the time the said Hunter had held the same, was very profitable, and that said Hunter had amassed a considerable fortune therefrom."

An account was also given in evidence by which it appeared that Minor, as clerk, had for the first year credited payments at the specific sum of 400 dollars; but that, afterwards, the credits were at irregular intervals, and usually of small sums—sometimes covering 400 dollars in the year; but often falling short of this amount. The account has the appearance of an open and running account.

The court was asked to charge the jury, on part of the defendant, that if they believed the plaintiff entered on the service upon an agreement for 400 dollars' salary for that year, and continued in it from 1834 to 1848, and during all the time, from time to time, received from Hunter in full at that rate for the whole service, then the plaintiff is not entitled to recover. This instruction was given.

The principal instruction demanded and refused was, that there was no evidence legally competent from which the jury could infer that there was any agreement between Hunter and Minor, upon other terms than for the payment of the services at the rate of 400 dollars per annum.

Another instruction was asked and refused, assuming for the

defendant that Minor was bound to give Hunter notice that more than $400 was claimed after the expiration of the first year, before he could be allowed a higher rate of compensation.

As the case depended on proof of a promise, (arising by implication,) on the fact that Hunter assented to the proposition made by Daniel Minor to the plaintiff below, no proof of further notice could be required; so that the controversy must be limited to the instruction first refused.

This instruction, if given, would have taken the case from the jury by rejecting the entire evidence as legally incompetent; except such as established the special contract.

There was evidence from which the jury might infer a promise on part of Hunter to further compensate Minor; and it was the duty of the circuit court to leave the fact to the jury: indeed, the first instruction which was given went to the limit of the court's power in its bearing on the facts; the jury being told that if they found the plaintiff was to receive 400 dollars for the first year's service, and had received at that rate for the whole period, then the plaintiff was not entitled to recover.

It is ordered that the judgment of the circuit court be affirmed.