UNITED STATES of America

v.

Wardell D. CRAVEN, Appellant.

No. 24962.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 15, 1971.

Decided March 2, 1972.

Mr. Armin U. Kuder, Washington, D. C. (appointed by this court) for appellant.

Mr. James A. Adams, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., at the time the brief was filed, John A. Terry and John G. Gill, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before ROBINSON and WILKEY, Circuit Judges, and A. SHERMAN CHRISTENSEN,* Senior United States District Judge for the District of Utah.

PER CURIAM:

This is an appeal from the conviction of the appellant, Wardell D. Craven, upon jury trial in the United States District Court of the crimes of assault with intent to kill while armed, D.C.Code, §§ 22–501 and 22–3202 (1967), and carrying a dangerous weapon, D.C.Code § 22–3204 (1967). The appellant in attacking both sentences challenges a "missing witness" instruction given to the jury and the effectiveness of his trial counsel.

The evidence at the trial established without serious dispute that on the evening of February 27, 1970, a birthday party was being given for Ira Seales, the victim, at his apartment in North-

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

west Washington. At approximately 11:30 p.m., appellant arrived with two uninvited young men whom appellant introduced as his cousins. Appellant had been invited by Mrs. Julia Brandon, a friend and neighbor of Mrs. Seales, but was not acquainted with the other guests. After intermittent discussion Seales asked appellant and his friends to leave. Later he attempted to escort the three to the door, an altercation ensued in which Seales was struck by Craven according to Seales, or Craven was struck by Seales according to Craven, and one of the appellant's friends brandished a knife or a razor. Before the dispute could proceed further, Mrs. Brandon persuaded appellant and his companions to leave the apartment.

Approximately half an hour later Mr. Seales went into the kitchen to answer a knock on a back door leading directly to an alley. Both the kitchen and the rear area were well lit as Seales raised the shade to see who was at the door. As he did so, two bullets were fired into the door, the door was then knocked from its hinges, and three persons burst into the kitchen. One of them fired three more shots wounding Seales in the left knee and left hip, and thereupon the three fled through the rear exit. Mrs. Seales and Mr. and Mrs. Alvin Austin were present when the shooting occurred; each had good opportunity to observe the assailants and identified appellant at a lineup and at the trial as the one who fired the shots wounding Mr. Seales.

Appellant's first point is that it was error for the trial court, over his objection, to give a missing witness instruction[1] concerning the two "cousins". This instruction was included with a number of other general instructions concerning evidence, credibility of witnesses, etc., not being more particularly applied through any comment of the court.

■ The appellant argues that such an instruction and inference are permissible only when the production of the witness is peculiarly within the power of a defendant and where, as well, the witness' testimony would elucidate the transaction. This is so. Wynn v. United States and cases cited therein. 130 U.S.App.D.C. 60, 64 & n.n. 19–20, 397 F.2d 621, 625 & n.n. 19–20 (1967). He asserts that the only testimony on this point established that both the appellant and the Government had attempted but failed to locate the witnesses. Thus, the witnesses were equally available (or unavailable) to both parties. "In addition," argues the appellant, "on the basis of the testimony of record one would have to expect the missing witnesses to confess to crimes to support defendant, making them unavailable to him as a practical matter."

It is true that the Government indicated, at the time the missing witness instruction was discussed in chambers, that it would like to find the missing witnesses to charge them as aiders and abettors. Indeed, it is obvious that if the Government's evidence were true both might be subject to prosecution, since one was shown to have brandished a knife or razor during the initial altercation between Seales and Craven and there was at least a strong inference from the prosecution's proof that both accompanied and reentered the house with Craven during the shooting. But the appellant's argument cuts two ways. If he were one of the assailants the testimony of his companions would have been incriminating. On the other hand, if appellant's version of the affair were true, their testimony would show that they, together with the appellant, left the apartment before the shooting and

1. "If a witness who could have given material testimony on an issue in this case was peculiarly available to one party (sic) was not called by that party and his absence has not been sufficiently accounted for, or explained, then you may, if you deem it appropriate, to (sic) infer that the testimony of the witness would have been unfavorable to the party who failed to call him."

that at no time were they at the scene with the appellant thereafter. If there were no alternative inferences to be drawn, one consistent with guilt and the other inconsistent therewith, there would be little point in most appropriate cases of submitting to the jury the sufficiency of explanation or the reasonableness of any inference. Nor can we accept the argument that the missing witnesses were equally available to both parties. About all the Government had to go on was Craven's story at the trial that they were known to him only by the nicknames of "Willie" and "Bubbles" respectively, and that one of them was in jail. But from appellant's own testimony it appeared not unlikely that he could have identified and located at least the witness in jail had he desired to do so.

■■ The question remains whether appellant's explanation, or lack of it, as to why he failed to call one or both of these witnesses was such as to support the giving of the instruction. A reading of the transcript is convincing of the inherent improbability of appellant's position—and this was more implied than asserted—that he endeavored, but was unable, to make them available at the trial. Neither the judge nor the jury was bound to accept this at face value. A reasonable inference could be drawn that the "explanation" was largely fabricated if it were any explanation at all. The appellant's own testimony was that

he had left his friends in the area where "they live . . . [and] they stay" and in which they "are usually" found.[2]

The trial court has considerable latitude in determining whether from all circumstances an inference of unfavorable testimony from an absent witness is a natural and reasonable one. Burgess v. United States, 142 U.S.App.D.C. 198, 205–206, 440 F.2d 226, 233–234 (1970). We have concluded here that the court did not exceed its allowable discretion.

The claim of ineffective assistance of counsel is not persuasive. Appellant concedes that his attorney "did far from a perfunctory job during the course of the trial", but complains that his counsel prejudiced his defense by calling a witness, Mrs. Brandon,[3] failing to object to a comment of the court in its charge unduly limiting the basis of his defense,[4] and by committing other tactical errors which we dismiss as insubstantial, if errors they were.

■ The calling of Mrs. Brandon as a part of the appellant's case was a matter of judgment. It was reached and announced when appellant's counsel was still hopeful that he could limit the Government's cross-examination to matters occurring before appellant first left the apartment, an attempt rejected by the trial judge. In spite of this, since Mrs. Brandon was in court and would certainly be called on rebuttal by the prosecution if she were not examined by counsel

2. For example the appellant testified:
   "I heard one was in jail for robbery, a Safeway store; I tried to locate both of them, just like I said I heard that one of them was in jail and I don't know where the other is. . . ."
   "Question: Did they come to the bus stop with you? (After the altercation inside the apartment.)
   "Answer: No, because they live in that area they stay in that area and they are usually in that area."

3. Mrs. Brandon was a neighbor who with the consent of Mrs. Seales had invited Craven to the party at the Seales' home the night of the shooting. While she was the only witness who had information deemed favorable to the defense concerning activities of appellant prior to the

shooting, it was also known that she would at some time testify that she saw Craven running in the vicinity shortly after the shooting.

4. In his brief appellant quotes these comments:
   "In this case, ladies and gentlemen, the defendant does not say that Mr. Seales wasn't shot, he recognizes that, but he says that he was not the one who did the shooting. He also says that he was not the one who carried the gun.

   . . . .

   "Thus while the Defendant asserts the mistaken identity defense, that is, that he did not carry a gun, he did not shoot the gun and committed (sic) the assault. . . ."

for the appellant, it could still have been thought that the impact of her unfavorable testimony would be less if it came in prior to the time the appellant testified rather than at the close of the case in direct contradiction to his testimony. Ineffectiveness of counsel cannot be established by nicely evaluating such tactical decisions through hindsight.

■ It should be noted that the statement quoted in the margin and emphasized in appellant's brief is comment by the court lifted out of context, actually followed by the reminder that "my comment on the evidence and on the facts, if I've indicated any, are not binding on you" and accompanied by instructions making it clear that no issue in the case affecting a determination of appellant's guilt or innocence was being withdrawn from the jury.[5]

If there were any instructional error deprecating or eliminating the defense of non-presence at the scene as asserted by appellate counsel and ascribed to the shortcomings of trial counsel, it could better have been urged here as a fundamental one of the trial court, reachable as such even in the absence of objections below. In the absence of some indication to the contrary, it might even be hereafter contended that failure of present counsel to urge it in that light rather than as a failure of prior counsel, demonstrated appellate ineffectiveness. But this merely illustrates how easy it is in retrospect to criticize the positions taken by attorneys on the firing line. A careful review of the record reveals that neither counsel here nor below was ineffective in any real sense and that the record is free from the prejudicial error asserted, and of any plain error.

■ In any event, in view of the overwhelming direct evidence timely placing appellant at the scene of the crime and the equivocal [6] and unsupported nature of his own testimony concerning his whereabouts following departure from the apartment the first time, any emphasis by the court or his trial counsel upon his more general defenses and any other claimed error were harmless beyond reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

Affirmed.

5. For example: "He (the appellant) says this is a case of mistaken identity. And in this connection you are instructed that the identity of the Defendant as a person who committed a crime is an element of every crime; therefore, the burden is on the Government to prove beyond a reasonable doubt not only that the crime alleged was committed, but also that the Defendant was the one who committed it. In this regard, you are instructed that a defendant need not prove that another person, or persons, may have committed the crime, nor is the burden on the Defendant to prove his innocence. If the facts and circumstances that have been introduced in evidence raise a reasonable doubt as to whether the Defendant is the person who committed the crime charged, then you should find the Defendant not guilty of the offense."

6. The following occurred on cross-examination:
"Q. Is it your testimony then that you were not at the back door at the time he was shot?
"A. That's the first time I've ever been to the apartment but I didn't know we ran through the back door.
"Q. Did you hear Miss Brandon just testify that she saw you running through the alley just after the shots were fired?
"A. Miss Brandon should have said everybody was running. It's just (like) I told you, I went home."