**UNITED STATES of America,**
v.
**James J. YOUNG, Appellant.**
**No. 24161.**

United States Court of Appeals,
District of Columbia Circuit.
Argued June 14, 1971.
Decided March 30, 1972.
Rehearing Denied May 31, 1972.

---

Mr. Patrick W. Lee, Washington, D. C. (appointed by this court), for appellant.

Mr. John R. Dugan, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., at the time the brief was filed, and John A. Terry and William H. Collins, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before LEVENTHAL, ROBINSON and WILKEY, Circuit Judges.

LEVENTHAL, Circuit Judge:

Appellant was indicted for first degree murder and convicted of the lesser-included offense of second degree murder. His appeal claims that questions and remarks by the prosecutor in cross-examination and argument to the jury were improper and, in the absence of correc-

tive instructions, deprived him of a fair trial. We affirm.

## I. THE FACTS

*The Government's Case*

Margaret May related the following events: On Thursday, August 14, 1969, decedent Willie R. Jefferson participated in a card game held in the yard in back of his apartment building with appellant James J. Young and others.[1] All the participants were drinking. The game began around 2:30 p. m. and continued until 6:30 or 6:45 p. m. Shortly thereafter Jefferson, the big winner, offered to return his winnings to the others because he didn't need the money. As he started to hand the money back to the players Mr. Young "snatched" his share. Jefferson then "reached after Mr. Young, and Mr. Young got back," and Jefferson "told him if he do that again, he would have to get his gun." Mr. Young said he would likewise get his gun. Both men then left.

Jefferson entered his apartment, on the ground floor. Young went out onto the street and returned fifteen minutes later, came into the hallway, and knocked on Jefferson's apartment door. He had a gun in his right hand. Mrs. May's account continues:

> He knocked on Mr. Jefferson's door real loud, and the door didn't open right then; so he took his foot and kicked the man's door in; and at that time, the door flew open; Mr. Jefferson at the door; and that is when Mr. Young asked, told him, you thought I wouldn't come back, and called him a bad word. [M.F.]

She then saw and heard Young shoot Jefferson three times and run out of the building. Jefferson had said nothing, had made no movement, and had nothing

---

I. The other players were Tommy Davis, who left the game at about 4:00 p. m., John Edwards, who replaced Davis, Louise Young, and another man who may or may not have been Rudolph Ford. Also present, but not participating in the game, were Clinton Lee and Etta (Edna) Mae Green.

The card game was in the backyard of 1835 Capitol Avenue, N.E., which adjoined the lot of 1834 West Virginia Avenue, N.E., where both deceased and Mrs. May had first floor apartments.

in his hand. This account was corroborated.[2]

*The Alibi Defense*

Appellant testified: He, Jefferson, and Mary Young played the entire game until it ended at 5:00 p. m. He testified that Jefferson had lost all his money and had to borrow from friends to continue. At one point Young caught Jefferson cheating, "and so I told him, if you all going to start cheating, I might as well get out the game." Appellant denied getting angry or arguing with Jefferson; he simply left the game. On the way over to pick up his car, he was met by Rudolph Ford, who had previously left the card game and gotten the car. They went to two bars until 7:00 p. m. and thereafter they went to Ford's apartment where they spent the rest of the night. Appellant learned of Jefferson's death by shooting on Sunday, August 17, the day he was arrested.

Edna Mae Green testified that she had seen Rudolph Ford and Clinton Lee leave the game around 4:30 p. m.; appellant left the game a short time later and was not present when Jefferson later left the game.

Rudolph Ford, the principal alibi witness, testified to the same effect as appellant Young, with some difference in details.[3] He said he and Young had left their construction job early on August 14, cashed their paychecks at a liquor store, and gone to Mrs. Green's house where they decided to play cards. Ford left the game three times, first to buy some liquor, second, to check on Young's car which was being repaired, but was not yet finished, and the third time to pick the car up. He drove back to the area of the game at about 5:00 p. m. and picked up Young, who had left the game and was waiting for Ford at a corner.

Ford testified that he was with appellant until the next morning. They visited two bars and then spent the rest of the night at Ford's house in the company of Ford's relatives. Ford learned at work the next day that Jefferson had been shot. On Monday, August 18, he learned that Young was charged with shooting someone. When he visited Young in jail, he learned that Young was charged with shooting Jefferson.

## II. PROSECUTOR'S CROSS-EXAMINATION OF ALIBI WITNESS AND REMARKS TO JURY

This trial presented the jury with a classic conflict, two irreconcilable lines of testimony. Appellant claims that the prosecution overstepped permissible bounds in attempting to discredit his alibi defense.

A. *Failure of Alibi Witness Ford to Contact the Police*

1. During his cross-examination of Rudolph Ford, the prosecutor asked:

Q. By the way, sir, you didn't give a statement to the police did you?

A. No, sir, I didn't.

Q. You didn't give a typewritten statement the next day like some of the other witnesses, did you?

A. No, sir, because I don't know nothing about it.

The trial judge interrupted, warning,

There is no indication Mr. [Prosecutor] this man was interviewed by the police. I think that question is not appropriate unless there is some indication that police interviewed him.

The prosecutor then asked whether Ford had contacted the police; he had

---

2. By two other eyewitnesses, Mrs. May's two daughters who were present in and around the building that day. All had seen Young before. The Government put in evidence a stipulation that subpoenas were issued to Clinton Lee, Louise Young, Johnny Edwards and Carlton Bradshaw, and none could be located by the Marshal.

3. Young said he and Ford quit work early because it was raining; Ford said it was because of the heat. Young said that they left work in a car owned by Hazel Davis; his own car had been taken to the mechanic the night before August 14. Ford testified that they left work in appellant's car and had taken it to the mechanic that afternoon.

not. In his argument to the jury, the prosecutor, seeking to portray Ford's alibi testimony as a fabrication, put it:

A man who never gave a statement, his name never comes up in the investigation, all of a sudden he shows up and testifies that the Defendant was with him.

\* \* \* \* \* \*

Rudolph Ford, who never even talked to the police, never even gave a statement, he tries to criticize Margaret May for not reporting it, but she gave a statement the next day. Ford never gave a statement. What kind of witness is that? That is the alibi defense.

■ We agree with the trial judge that it was improper for the prosecutor to examine the witness on whether he had given a statement to the police. And it was certainly improper for the prosecutor, after being cautioned, to make this point twice in his summation to the jury.

The same conclusion applies to the prosecutor's questions and comment concerning the witness's failure to contact the police. Ford was not interviewed by the police, and if, as he claimed, he did not know that appellant was charged with shooting Jefferson until he visited him in jail, he would not have had any reason to go to the police previously.

■ Nor is there any reasonable inference from Ford's failure to contact the police after he learned of the charge against appellant. When a person is approached by the police for questioning, our cases have "commented on the duty of every person to cooperate with police and to respond unless a Fifth Amendment claim is involved." Coates v. United States, 134 U.S.App.D.C. 97, 100, 413 F.2d 371, 374 (1969); see also Hicks v. United States, 127 U.S.App.D.C. 209, 212, 382 F.2d 158, 161 (1967). But no

inference can be drawn from the fact that a witness did not go to the police when he learns they have made an arrest of a defendant for a crime committed at a time for which he can provide alibi testimony. He might reasonably presume that it was sufficient for him to relate his knowledge to the attorney retained or appointed to represent defendant.[4]

However, we do not think this improper questioning and comment was so prejudicial as to require reversal. As to the question concerning failure to contact the police, there was neither objection or warning. There was no repetition. Ford gave a satisfactory explanation. We see no substantial prejudice; in all likelihood the jury took it for a strained argument by the prosecution. As Judge Danaher has commented, prosecutors often overtry their cases, and in their zeal say things that are regrettable but are not significant in terms of influencing a conviction. Turner v. United States, 135 U.S.App.D.C. 59, 62, 416 F.2d 815, 818 (1969).

### B. *Prosecution References to "Missing Witnesses"*

Appellant's major attack concerns efforts by the prosecutor to discredit his alibi by inferences to be drawn from the absence of persons mentioned in the alibi account.

On cross-examination, after appellant testified that one Hazel Davis drove him to the card game, the prosecutor asked "Is he here now?" and "Did you make any efforts to get him here?" Referring to Young's testimony that he cashed his paycheck at a liquor store, the prosecutor asked:

"Q: This man that cashed the check at the liquor store, *did you make any efforts to get him here?*

A: For what reason.

---

4. During cross-examination Ford testified that on three occasions he talked to defendant in jail about his difficulty; that defendant did not say he wanted Ford to be a witness; that defendant did not discuss Ford's testimony with him. But Ford must have had a conference with defendant's attorney after that counsel learned from defendant, or perhaps Ford direct, of Ford's pertinent knowledge.

Q: Can you answer the question, yes or no?

A: I can't answer."

THE COURT: I think that is a proper answer. What possible reason would he have to have him here? I think the question is quite inappropriate and if an objection was made I would sustain it.

\* \* \* \* \* \*

[At bench conference.]

THE COURT: I have indicated to you before, Mr. _____, not only on this trial but on other trials, that I am not favorably disposed toward asking a man who is incarcerated in jail what efforts he has made to get witnesses present. The question of the choice of witnesses is a matter for the tactics and determination of his counsel in connection with the trial. I think it carries to the jury perhaps an implication that he had some obligation to bring these people where, frankly, I can't see where the testimony would be material.

\* \* \* \* \* \*

"He doesn't have to corroborate times that are not alibi times. You are talking about what he did in the morning in terms of whether he got two beers or six beers, which has nothing to do with alibi. I think in any event it is counsel's obligation to make those determinations and not an incarcerated man with no particular legal experience."

In cross-examining Rudolph Ford, who had testified that he and appellant went to a bar after leaving the card game, the prosecutor asked if he remembered the name and address of the bar. Ford was not sure. The trial judge sustained defense counsel's objection to the question "You never went back and checked out what address it was?" and observed, "There is no requirement he do that." Later, after Ford said that he had talked briefly with the bar's pro-

prietor, the prosecutor asked, "By the way, sir, that proprietor is not here at this trial, is he?" The trial judge sustained the defense objection, saying "He has no obligation in any regard."

The prosecutor had another occasion to advert to missing witnesses when he focused on Ford's testimony that Young went to Ford's home after they left the bars and stayed there all night. The prosecutor asked Ford who else was at the house that night and Ford gave the names of three witnesses: his cousin, aunt and aunt's boyfriend, and said that they all sat together talking. (Tr. 252–253). No question was raised in advance of summation to the jury concerning the presence or absence of these witnesses. But in closing argument to the jury the prosecutor said:

"You saw Ford. Are you going to believe him? Ford works with the Defendant, has worked with him, he said, for a couple of years. Are you going to believe him? With the Defendant. Poor recollection of times, places, names, people. He says they talked to people in the two bars. Doesn't recall any of the names. *People not here.* He says that the Defendant went to his house and stayed there that night. Three of his relatives were there that night when they came. *You haven't heard from them, have you?* Are you going to believe Ford?" (Emphasis supplied.)

 It is the rule, applicable in criminal as well as civil cases, "if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it permits an inference that the testimony, if produced, would have been unfavorable."[5] Both comment by counsel and instruction by the judge as to absent witnesses is prohibited if either of the conditions is lacking, that the witness was peculiarly within the power of the party to produce, and that his testimony would elucidate

---

5. Graves v. United States, 150 U.S. 118, 121, 14 S.Ct. 40, 37 L.Ed. 1021 (1894).

*See generally* 2 J. Wigmore, Evidence § 287 at 286 (3rd ed. 1940).

the transaction. *See* Wynn v. United States, 130 U.S.App.D.C. 60, 397 F.2d 621 (1967); Pennewell v. United States, 122 U.S.App.D.C. 332, 353 F.2d 870 (1965); Richards v. United States, 107 U.S.App.D.C. 197, 199–200, 275 F.2d 655, 657–658, cert. denied, 363 U.S. 815, 80 S.Ct. 1253, 4 L.Ed.2d 1155 (1960).

■ Plainly the persons referred to by appellant as the man in the liquor store who cashed the paychecks, and the man (Hazel Davis) who drove them earlier in the afternoon, were not "witnesses whose testimony would elucidate the transaction" within the meaning of the missing-witness rule for their testimony would barely have been relevant and certainly could not be considered material. These witnesses encountered Young and Ford well before Young and Ford were admittedly present at the card game. The trial judge was correct in his comments. Their testimony was so remote in time as not to be material, and the Government would not have been entitled to a missing witness instruction. It was not proper for the prosecutor to make a comment during his summation in order to persuade the jury to draw an inference against defendant from the fact that they had not been called by the defense as witnesses.

■ If a prosecutor engages in prejudicial summation it is not dispositive that defense counsel did not object, especially since objection cannot always procure a realistic cure for the damage.[6] The question is one of degree, and it counts against this prosecutor that he made his improper comment after having been admonished by the judge to abstain, from this line. Nor is it decisive that part of the prosecutor's argument was justified—such as the comment on the

failure of appellant and Ford to remember the names of the persons they met in the bars. The intermesh of the proper may actually escalate the impact of the improper, just as some truth may bait the hook for the impact of a partial lie or libel.[7]

■ However we do not discern that the references to these relatively remote witnesses wrought the kind of prejudice which warrants reversal. This is not the kind of repetition of references to insignificant absences that "cumulate to the point of distortion." [8] These references, like the prosecutor's questions and comment concerning Ford's failure to contact the police and give a statement, are more fairly condemnable for their weakness than prejudicial impact, a possibility that was further muted by the fact that the trial judge made it clear to the jury that this approach of the prosecutor "is quite inappropriate." This matter is appropriately left by treating it as not ground for reversal but as context wherein more weight may accrue to other objectionable comments of prosecutor.

We now consider the three persons who, Ford said, saw Young at Ford's house. Their testimony would have been material, indeed would have provided important corroboration of the alibi if they had testified in court, and hence would have "elucidated" the issues. Ford's testimony was bolstered by the specific detail provided by his naming his relatives who were present that night, and a desire on the part of the prosecution to comment on their absence is understandable.

We turn to the prosecutor's comments concerning Ford's relatives, for we cannot bypass these on the claim of harmless error.[9] We begin with the fact that

6. King v. United States, 125 U.S.App.D.C. 318, 331, 372 F.2d 383, 395 (1966).

7. Afro-American Pub. Co. v. Jaffe, 125 U.S.App.D.C. 70, 76, 366 F.2d 649, 655 (en banc, 1966).

8. United States v. Free, 141 U.S.App.D.C. 198, 202, 437 F.2d 631, 636 (1970).

9. The Government argues that even if these prosecutor references were improper

the error was harmless. That approach is available where the uncontested facts confirm defendant's guilt, *e. g.,* United States v. Jones, 140 U.S.App.D.C. 1, 433 F.2d 1107 (Jan. 27, 1970) (fingerprints on a rifled money box not accessible to the public), or where there is physical corroboration, like possession of stolen property. But here the strong Government case of testimony of eyewitnesses as

he did not follow the specific procedures prescribed by this court to be followed before a party may comment on the absence of witnesses from the trial, in order to avoid the prejudice which can result from improper use of such comment. Surely it should not be put to the jury, as either instruction or argument, that an inference should be drawn from a party's failure to produce witnesses if the judge concludes that the party was powerless to do so, Gass v. United States, 135 U.S.App.D.C. 11, 19, 416 F.2d 767, 775 (1969); Wynn v. United States, *supra*, 130 U.S.App.D.C. at 64 and cases at n. 19, 397 F.2d at 625 n. 19.

To avoid prejudicial misuse of comment on a party's failure to call witnesses we required in *Gass, supra*, 135 U.S. App.D.C. at 19–20, 416 F.2d at 775–776:

> . . . that for the future when counsel, either for the prosecution or the defense, intends to argue to the jury for an inference to be derived from the absence of a witness, an advance ruling from the trial court should be sought and obtained.

The Government's brief acknowledges the prosecutor's failure to follow the *Gass* procedure, but seeks to soften the departure by referring to the language in *Gass* as a "suggestion." (Br. 14). It was more than a suggestion; it stated a rule of practice to be followed unless there is good reason to the contrary. If the prosecutor's failure to follow the *Gass* procedure means that he is now unable to show the permissibility of a comment he could have established at the time of trial, he must abide the consequences.

The prosecutor's comment would have been improper as to any witnesses defendant would have been powerless to produce at trial, *e. g.*, because he did not know their whereabouts or could not make them amenable to subpoena. We take into account, as the court did in *Gass*, that defense trial counsel did not raise an objection, and that several witnesses were involved. In *Gass* there were eight witnesses, and the court put it as likely that at least one of them was available, a circumstance supporting the prosecutor's comment to that extent. In the case at bar, there are three witnesses, and the overall context is one in which several of the card players could not be found by the marshal (see note 1).

Defendant's counsel on appeal would have it that the prosecutor erred, by failing to follow the *Gass* procedure; that the burden of overcoming that error cannot be put on defense trial counsel, by requiring an objection; and in sum the proper remedy is reversal. We cannot accept this approach. Even if there is plain error, there must be some determination that it was prejudicial. Here the plain error was procedural, and reversal would require an appraisal that if the correct procedure had been followed the comment would not have been permitted. If we visualized both the possibility of plain error in the comment and reason for lack of defense objection, the course that would be indicated for this court is a remand, for further inquiry into the underlying facts, as was done in Stewart v. United States, 135 U.S.App.D.C. 274, 418 F.2d 1110 (1969), where we retained jurisdiction and ordered that the pertinent information be developed and transmitted to us in the form of a supplemental record.

In the case at bar, however, defense trial counsel did not shrink from presenting objections to the prosecutor's summation which he thought appropriate; and indeed he made one shortly prior to these references. If he were concerned lest he emphasize objectionable matters in the mind of the jury, he could have sought a bench conference.

■ What in the last analysis seems decisive in this case is that defense trial counsel not only failed to object to the

---

to defendant's presence at the time of death is matched by testimony of other eyewitnesses, as to his presence elsewhere, which in principle stand on the same plane. In this situation we cannot say that comment on missing witnesses could not have been significant.

prosecutor's references, he tried to use these as a predicate for offering his own comments, in argument, to the absence of Clinton Lee and Johnny Edwards. The fact that his maneuver was properly rejected, since the Government had tried but had been unable to subpoena these men,[10] does not lessen the impact of his earlier silence. In the circumstances, including the fact that although the witnesses were not linked to defendant directly they were relatives of his friend, we think the probability of a substantial claim of defense inability to call or subpoena Ford's relatives, is not sufficient, given the failure to object, the attempt to make tactical use of the reference, the lack of any motion in the trial court or this court,[11] supported by a meaningful affidavit of such defense inability, to result in a reversal or remand in the interest of justice.

Our conclusion that the uncontested comments of the prosecutor should not occasion reversal is fortified by our appraisal that it is most unlikely that the defense could have succeeded in any alternative contention that the prosecutor's comment be hushed on the ground that even assuming the witnesses were available to the defense they were equally available to the prosecution. We are aware that in Brown v. United States, 134 U.S.App.D.C. 269, 414 F.2d 1165 (1969), the court said that a missing witness instruction cannot be given against a defendant unless there is a showing that the witness was not available to be subpoenaed by the Government.[12] But Brown is subject to the qualification that "availability" of a witness to the Government, as to any other party, must be judged "practically as well as physically." Stewart v. United States, 135 U.S.App. D.C. 274, 279, 418 F.2d 1110, 1115 (1969);[13] Burgess v. United States, 142 U.S.App.D.C. 198, 440 F.2d 226 (1970). Thus, no inference may arise from the failure to call a witness to give testimony implicating himself.[14] And whether a person is to be regarded as equally available to both sides may depend not only on physical availability but on his "relationship" to the parties.[15] The

10. Stewart v. United States, supp. opin., 135 U.S.App.D.C. 274, 279, 418 F.2d 1110, 1115 (1969).

11. In this court the motion could have shown ground to request a Stewart-type remand to amplify the record.

12. The court stated that this showing must take into account the Government's opportunity to call the witness after learning of his identity before or during trial. We need not pursue the issue of "availability" of a witness whose identity was learned only late, see United States v. Stevenson, 138 U.S.App.D.C. 10, 13–14, 424 F.2d 923, 926–927 (1970), especially in view of the District Court's new Rule 87, Defense of Alibi, promulgated October 12, 1970, after the trial in the instant case was concluded. This rule requires a defendant who proposes to offer the defense of alibi to serve notice of his intention, within 20 days after the prosecutor serves a demand stating the time, date and place at which the alleged offense was committed. Defendant must state the places he claims to have been and the names and addresses of witnesses upon whom he intends to rely to establish the alibi.

13. The court noted that McClanahan v. United States, 230 F.2d 919, 926 (5th Cir. 1956) stated that availability is to be determined not from a witness's mere physical presence or accessibility or subpoena but may also depend on his relationship to the parties, and the nature of the testimony he may be expected to give.

14. Bowles v. United States, 142 U.S.App. D.C. 26, 439 F.2d 536, 541 (en banc, 1970); Pennewell v. United States, 122 U.S.App.D.C. 332, 333, 353 F.2d 870, 871 (1965).

15. Milton v. United States, 71 App.D.C. 394, 397, 110 F.2d 556, 559 (1940); Egan v. United States, 52 App.D.C. 384, 396, 287 F. 958, 970 (1923).

Thus, a historic "relationship" settled by a long established rule, see Gallagher v. Hastings, 21 App.D.C. 88, 98 (1903), renders comment permissible on the failure of a party to call his employee, notwithstanding the other party's ability to secure attendance and testimony by process, since the witness is regarded, ordinarily, as peculiarly available to the employer, by virtue of his likely favorable disposition to the employer, and the employer's better opportunity to ascertain his testimony in advance of taking the stand. See Note, 68 A.L.R.2d 1072 (1957).

central question is whether from all the circumstances an inference of unfavorable testimony from an absent witness is a natural and reasonable one. United States v. Craven, 147 U.S.App.D.C. 383, 458 F.2d 802 (1972).

We are aware that the foregoing does not by any means answer all of the questions that arise with respect to missing witnesses. But it serves to assure us concerning the present case, that it presents a context which makes it improbable that any serious claim of unfairness or prejudice would lie against the prosecutor for comment on the failure of defense to call Ford's relatives, even assuming it could have been established that the Government had opportunity to obtain their attendance by process.

We also take note that this was a case where there was no instruction by the judge. This factor merits some exposition. There is a difference between an instruction, which has the weight of law, and argument of counsel, which is only that.[16] Argument of counsel is limited, however, by requirements such as that it must not be in conflict with the law to be declared by the trial judge and it must not taint the trial with unfairness. As our rulings in *Wynn* and *Pennewell* make clear, when the judge concludes that the witness was not peculiarly available to a party, or that his testimony would not be such as to elucidate the transaction, comment of opposing counsel arguing for an inference from his absence is contrary to law and unfair, and cannot be permitted in argument to the jury. We suggested in *Wynn* and required in *Gass* that a lawyer proposing to comment on absence of a witness first bring the matter to the attention of the trial judge, in order to avoid unnecessary prejudicial error in the case.[17]

We also pointed out in *Gass* that ordinarily a judge permitting argument by counsel should prepare an instruction concerning the inference so as to avoid the risk of prejudicial error and enable the jury to discharge its functions. The judge has the duty to give an instruction if he concludes that the case is clear for a missing witness inference against a party, *e. g.*, the party had the physical ability to locate and produce the witness, and there was such a relationship, in legal status or on the facts as claimed by the party as to make it natural to except the party to have called the witness. But in the in-between case where each side has the physical capacity to locate and produce the witness, and it is debatable which side might more naturally have been expected to call the witness, there may be latitude for the judge to leave the matter to debate without an instruction, simply permitting each counsel to argue to the jury concerning the "natural" inference of fact to be drawn.[18]

---

16. While we accept this aspect of Judge Fahy's opinion in *Burgess*, see 142 U.S. App.D.C. at 209, 440 F.2d at 235, we are not so clear concerning Judge Fahy's distinction which would permit some comment in counsel's argument on the fact that a witness is missing so long as he stopped short of saying that an inference could be drawn that the testimony of the absent witness would be adverse to the other side had he been called. Whether or not a lawyer explicitly uses the word "inference," when his comment, as in argument to the jury, emphasizes the fact that witnesses were not called by the other party, he is, ordinarily at least, in fact arguing to the jury that they may conclude that the testimony of these witnesses would be adverse to the party who failed to call them.

17. *See* Gass v. United States, *supra*, 135 U.S.App.D.C. at 19–20, 416 F.2d at 775–776.

18. Presumably this is the situation that led Wigmore and eminent judges to say that even when a witness is "available" to both parties inferences may be drawn against both parties, with the strength of the inference against either depending on the circumstances. 2 Wigmore, Evidence § 288; United States v. Llamas, 280 F.2d 392 (2d Cir. 1960) (Clark, J.); United States v. Jackson, 257 F.2d 41 (3d Cir. 1958) (Goodrich, J.); United States v. Beekman, 155 F.2d 580 (2d Cir. 1946) (Frank, J.).

We noted the existence of this approach (a) in Billeci v. United States, 87 U.S. App.D.C. 274, 278–279, 184 F.2d 394,

Permitting the issue to be debated in argument generates a duty to provide an elucidating instruction if one is sought; it is only in the context of lack of request that we contemplate some latitude to omit an instruction.

■ The basis for omitting the instruction, though ordinarily provided pursuant to *Gass*, would be the conclusion of the judge, first, that even in the absence of instruction the situation is sufficiently clear cut that counsel's argument can be fairly understood and appraised by the jury, without prejudicial impact; and second, that the preparation of a careful instruction to state the ground rules for appraising counsel's argument would be unnecessary and time-consuming; and, possibly, third, that such instruction might even be distracting, conceivably counter-productive, leading a jury, respectful of the court's concerns, to focus unduly on the non-evidence rather than the evidence in the case.[19]

In many cases, perhaps most cases, however, the trial judge may conclude that an instruction would be helpful, and toward that end we have included in the Appendix to this opinion, a specimen instruction which the trial judge may find it useful to use or adapt.

In this case there was argument without an instruction, and the context of the argument was such that we discern no prejudicial error.

Affirmed.

398–399 (1950), where we reversed an instruction that advised the jury solely of an inference that might be drawn against defendant, and (b) in United States v. Free, 141 U.S.App.D.C. 198, 202–203, 437 F.2d 631, 635–636 (1970), where we permitted the prosecutor to ask defendant where certain persons were, provided the questioning was not handled unfairly.

In the case at bar, the trial judge correctly rejected any questioning of defendant as to why witnesses were not present, since this was a matter for defense counsel, but permitted questions as to whether defendant gave names of persons involved to his counsel.

## APPENDIX

### Specimen Instruction on Absent Witnesses

Counsel have argued that you should draw an inference from the absence of certain witnesses. The court has determined that each side had the ability to produce the witnesses. If you conclude that the testimony of a witness would have cast significant light on the issues, and that it would have been natural for one of the parties to have called that witness in support of his presentation if the facts known by the witness had been favorable to the position of that party, you may infer that if the witness had been called he would have given testimony that would have been unfavorable to that party which failed to call him. But you are not required to draw that inference. And if you think that it would have been equally natural for each of the parties to have called the witness, and that each might equally have been expected to do so, then you may rightly conclude that since an equal inference could be drawn against each party, they cancel each other out. And if the matter seems doubtful, then you may rightly decide that no inference should be drawn from the absence of the witness. In that event, your verdict should be based on the evidence that was presented in court, and should not be affected by the witnesses who were not called.

19. The judge would consider this issue in the pre-summation conference pursuant to *Gass*, assuming that opposing counsel has not brought forward any matters that would render comment by counsel unfair. The exact content of any instruction may have to be "tailored" to the case.

The judge has discretion to preclude absent witness comment by either counsel, though the matter is debatable, when he concludes that there would be need for ground rules in instructions to avoid speculation and unfairness, and that the entire matter is a disproportionate burden on the trial. This may be likened to his discretion to limit proof and consideration of matters that are collateral.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge (concurring):

I join unreservedly in affirmance of appellant's conviction [1] and, in all respects save one, in Judge Leventhal's excellent opinion for the court. My sole difficulty is the holding that in some instances the trial judge has latitude to permit counsel to argue to the jury for an adverse inference from the absence of a trial witness without an instruction by the judge to the jury on that score.[2] In my view, an instruction explaining the legal principles which set the conditions under which such an inference may be drawn should always accompany leave to counsel to solicit it. That, I think, is a step indispensable to adequate guidance of the jury and, by the same token, to the fulfillment of the jury's mission.

Instructions have an important and familiar role in the federal jury system. Questions of law, of course, are for the judge, but the resolution of issues of fact in common law cases is for the jury.[3] That the facts to be inferred from proven facts is exclusively within the province of the jury is a canon that has long been settled.[4] This allocation of trial functions between judge and jury is influenced, if not commanded, by the jury-trial guaranties of the Constitution.[5] But although jurors are the sole arbiters of the facts, their determination must be reached under legal standards. And since jurors are untrained in the law, they must look to the judge for identification and comprehension of the legal rules that will enable them to discharge their responsibilities. The judge thus has a duty to instruct them, clearly and fully, on the principles of law that apply to and govern the case on trial.[6] The duty, indeed, is even greater, for "it is the judge's special business to guide the jury by appropriate legal criteria through the maze of facts before it. . . ."[7] Manifestly, without proper instructions jurors are apt to flounder through individual conceptions—which understandably may well be misconceptions—of what the applicable law actually is.[8]

1. My concurrence reflects full agreement that under the circumstances the prosecutor's missing witness argument to the jury was improper but not substantially prejudicial to the rights of the accused.

2. *Ante* p. 943.

3. Magenau v. Aetna Freight Lines, 360 U.S. 273, 278, 79 S.Ct. 1184, 3 L.Ed.2d 1224 (1958); Byrd v. Blue Ridge Rural Elec. Cooperative, 356 U.S. 525, 537, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); Schaefer v. United States, 251 U.S. 466, 476, 40 S.Ct. 259, 64 L.Ed. 360 (1920); Oscanyan v. Arms Co., 103 U.S. 261, 266, 26 L.Ed. 539 (1880).

4. *E. g.*, Barreda v. Silsbee, 62 U.S. (21 How.) 146, 166, 16 L.Ed. 86 (1858); Nutt v. Minor, 59 U.S. (18 How.) 286, 289, 15 L.Ed. 378 (1855).

5. U.S.Const. Amends. VI, VII. See Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, 369 U.S. 355, 359, 82 S.Ct. 780, 7 L.Ed.2d 798 (1961); Byrd v. Blue Ridge Rural Elec. Cooperative, *supra* note 3, 356 U.S. at 536–537, 78 S.Ct. 893.

6. *E. g.*, Delli Paoli v. United States, 352 U.S. 232, 238, 77 S.Ct. 294, 1 L.Ed.2d 278 (1956); Pleasants v. Fant, 89 U.S.

(22 Wall.) 116, 121–22, 22 L.Ed. 780 (1874). The role of the trial judge when instructing the jury has been described as a careful exposition of "the principles of law applicable to the case, restricted to [those] matters in issue in such manner as to be readily understood by the mind untrained in the law. The issues must be presented is the most intelligible form, and the principles of evidence suggested wherever possible." Farley, Instructions to Juries—Their Role in the Judicial Process, 42 Yale L.J. 194, 206 (1932). Stated another way, "[t]he sum total must be addressed to the facts to be found by the jury, in order to enable them better to understand their duty and to prevent them from arriving at wrong conclusions." *Id.*

7. Bollenbach v. United States, 326 U.S. 607, 613, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946). See also United States v. Casale Car Leasing, Inc., 385 F.2d 707, 711 (2d Cir. 1967).

8. While an accused cannot usually complain of right of the trial judge's refusal to charge exactly as he requests, he may justifiably complain when the judge, instead of charging the jury on the law expressly, relies on the jury's ability to

Instructions, then, are vital cogs in the federal judicial machinery. On their coverage and caliber depends the integrity of jury verdicts and, in the long run, the worth of the jury system itself. The immediate beneficiaries are, of course, the litigants, and their stake in high quality instructions is obvious. For the very best of reasons, a party is entitled to have the jury instructed on all essential questions of law involved in the case.[9] His is the right of trial by jury, and "[i]t is almost, if not, as important to a [party] to have a jury instructed on the law applicable to his particular case by the judge, who knows the law, as to have a jury of his peers."[10]

The basic considerations demanding instructions elucidating for the jury the legal aspects of the case obtain clearly enough when one party requests the jury to draw an unfavorable inference from his opponent's failure to produce a witness. That we recognized several terms ago when Gass v. United States[11] was decided. There we laid down two requirements to be observed "when counsel, either for the prosecution or the defense, intends to argue to the jury for an inference to be derived from the absence of a witness. . . ."[12] One, which the court's opinion in the case at bar aptly stresses,[13] is that counsel must seek and obtain from the trial judge a ruling confirming the propriety of the argument before it is presented to the jury.[14] The other is "that if such argument is to be permitted, an appropriate instruction should be given defining for the jury the conditions under which the inference might be properly drawn."[15] "Only by such a practice," we declared, "can the risk of vitiating the entire trial by improper argument be avoided, and can the jury be informed sufficiently to enable it to intelligently discharge its function in that regard."[16]

The nub of the matter is that nonproduction of a witness is a circumstance that may or may not offer a contribution to the search for truth at a judicial trial. Numerous American courts—this court included—have struggled in a vast multitude of lawsuits to separate the types of situations wherein the witness' absence has real significance from those in which it does not. The distillation from these efforts is a fairly complex body of rules by resort to which the fitness of the occasion for jury consideration of an unfavorable inference is to be measured. It takes only brief mention of the leading principles to make evident the need for judges to delineate through instructions to juries the criteria under which the latter may determine whether to draw such an inference in the case on trial.

The missing witness "inference is based, not on the bare fact that a particular person is not produced as a witness, but on his non-production when it would be natural for [a party] to produce the witness if the facts known by him had been favorable."[17] It is then, and then only, that nonproduction "serves to indicate, as the most natural inference, that the party fears to do

---

ascertain it somehow. United States v. DiDonato, 301 F.2d 383, 385 (2d Cir. 1962). See also Screws v. United States, 325 U.S. 91, 107, 65 S.Ct. 1031, 89 L.Ed. 1495 (1944).

9. Tatum v. United States, 88 U.S.App. D.C. 386, 389, 190 F.2d 612, 615 (1951). See also Screws v. United States, *supra* note 8, 325 U.S. at 107, 65 S.Ct. 1031; Thomas v. United States, 151 F.2d 183, 186 (6th Cir. 1945). *Cf.* Brooke v. United States, 128 U.S.App.D.C. 19, 22, 385 F.2d 279, 282 (1967).

10. Williams v. United States, 76 U.S.App. D.C. 299, 301, 131 F.2d 21, 23 (1942).

11. 135 U.S.App.D.C. 11, 416 F.2d 767 (1969).

12. *Id.* at 19, 416 F.2d at 775.

13. *Ante* p. 943.

14. 135 U.S.App.D.C. at 19, 416 F.2d at 775.

15. *Id.* at 19–20, 416 F.2d at 775–776.

16. *Id.* at 20, 416 F.2d at 776.

17. 2 J. Wigmore, Evidence § 286 at 166 (3d ed. 1940).

so;"[18] and it is "this fear [that] is some evidence that the . . . witness if brought would have exposed facts unfavorable to the party." [19] So it is that "we have carefully restricted application of [the missing witness] rule to situations where it is 'peculiarly within' the party's 'power to produce' the witness and where, as well, the witness' testimony 'would elucidiate the transaction;' " [20] it is, too, why we have "outlawed both comment and instruction as to absent witnesses where either of these conditions was lacking." [21] And a bundle of subsidiary rules isolate specific circumstances which operate to frustrate satisfaction of one or the other of these requirements and render the inference unavailable.

The whereabouts of the witness may be unknown.[22] He may bear such a relationship with one party as to deter the other from calling him.[23] The witness may be relatively unimportant,[24] able only to offer testimony that is cumulative or inferior.[25] The witness may be biased against the non-calling party,[26] or the testimony anticipated may be privileged.[27] A party may have some other satisfactory explanation for non-production.[28] The witness, moreover, may be equally available to both parties,[29] in which event each may be open to an adverse inference depending for strength upon the surrounding circumstances.[30] This catalog is intended to be illustrative rather than exhaustive. And very importantly the missing witness inference is permissive, never mandatory,[31] and even when indulged "exerts [only] impeaching [but] not probative force." [32]

Unlike ordinary evidentiary inferences, then, the missing witness inference is not one that jurors can deal with safely by a process of simple deduction from

18. *Id.* § 285 at 162. See also Graves v. United States, 150 U.S. 118, 121, 14 S.Ct. 40, 37 L.Ed. 1021 (1893).

19. 2 J. Wigmore, Evidence § 285 at 162 (3d ed. 1940).

20. Wynn v. United States, 130 U.S.App. 60, 64, 397 F.2d 621, 625 (1967), quoting Pennewell v. United States, 122 U.S. App.D.C. 332, 333, 352 F.2d 870, 871 (1965).

21. *Id.* (citations omitted).

22. *E. g.*, Stewart v. United States, 135 U.S. App.D.C. 274, 279, 418 F.2d 1110, 1115 (1969) (supplemental opinion).

23. *E. g.*, Burgess v. United States, 142 U.S. App.D.C. 198, 209, 440 F.2d 226, 237 (1970).

24. Brown v. United States, 134 U.S.App. D.C. 269, 270–271, 414 F.2d 1165, 1166– 1167 (1969) ; Morton v. United States, 79 U.S.App.D.C. 329, 332, 147 F.2d 28, 31, cert. denied, 324 U.S. 875, 65 S.Ct. 1015, 89 L.Ed. 1428 (1945). See also 2 J. Wigmore, Evidence § 287 at 168– 169 (3d ed. 1940).

25. Brown v. United States, *supra* note 24, 134 U.S.App.D.C. at 270–271 n. 2, 414 F.2d at 1166–1167 n. 2 ; Morton v. United States, *supra* note 24, 79 U.S. App.D.C. at 332 n. 11, 147 F.2d at 31 n. 11. See also 2 J. Wigmore, Evidence § 287 at 168–169 (3d ed. 1940).

26. Jarrell v. State, 251 Ala. 50, 36 So.2d 336, 441 (1948) ; Sterling v. McKendrick, 134 So.2d 655, 658 (La.App.1961) ; State v. DePaola, 5 N.J. 1, 73 A.2d 564, 574 (1950). See also 2 J. Wigmore, Evidence § 287 at 168–69 (3d ed. 1940).

27. *E. g.*, Graves v. United States, *supra* note 18, 150 U.S. at 121, 14 S.Ct. 40.

28. See 2 J. Wigmore, Evidence § 290 at 178 (3d ed. 1940). See also Critzer v. Shegogue, 236 Md. 411, 204 A.2d 180, 185 (1964).

29. 2 J.Wigmore, Evidence § 288 at 169 (3d ed. 1940). See *ante* p. 943 n. 18.

30. United States v. Free, 141 U.S.App.D.C. 198, 203, 437 F.2d 631, 636 (1970). See McGuire v. United States, 84 U.S.App. D.C. 64, 65–66, 171 F.2d 136, 137–138 (1948) ; Billeci v. United States, 87 U.S. App.D.C. 274, 278, 184 F.2d 394, 398 (1950). See also Culp v. Repper, 64 App.D.C. 337, 78 F.2d 221 (1935) ; Egan v. United States, 52 App.D.C. 384, 287 F. 958 (1923) ; McClanahan v. United States, 230 F.2d 919 (5th Cir. 1956) ; Johnson v. United States, 291 F.2d 150 (8th Cir. 1961).

31. See note 36, *infra*.

32. Burgess v. United States, *supra* note 23, 142 U.S.App.D.C. at 208, 440 F.2d at 236 (concurring opinion). See the discussion there.

the fact that the witness did not appear. It is, rather, an inference the accuracy of which depends upon scrupulous observance of the considerations that might serve to give it validity. In sum, it is of a piece with other inferences that are to be indulged only when special conditions have been met, and are to be utilized only for a limited purpose.[33] When lay jurors are not specifically instructed on these topics, counsel's arguments for an inference can be treacherous.

My colleagues hold that a missing witness instruction by the court should ordinarily accompany authorization of a missing witness argument by counsel, and must invariably do so whenever the trial judge is of the opinion that "the case is clear for a missing witness inference against a party."[34] They also hold, however, that where the witness is physically available to both parties but "it is debatable which side might more naturally have been expected to call" him, the instruction may be omitted notwithstanding argument for a "'natural' inference of fact to be drawn."[35] With all due respect, the latter is a proposition to which I am unable to subscribe.

Solicitation of a missing witness inference without an instruction defining its legal prerequisites[36] does not comport with judicial policy favoring juries as well informed about their assigned tasks as is possible.[37] The jury's need for guidance, it seems to me, is much greater when an element pivotal to the inference "is debatable" than when the occasion for considering the inference "is clear."[38] Beyond that, even when the case is conducive to the drawing of a missing witness inference, the jury may employ it only limitedly—for impeachment but not for probative purposes.[39]

33. A ready example is the inference derivable from the possession of recently stolen property. See, e. g., Pendergrast v. United States, 135 U.S.App.D.C. 20, 31–32, 416 F.2d 776, 787–788 (1969). Another is the inference that might flow from the accused's flight. See, e. g., Austin v. United States, 134 U.S.App.D.C. 259, 414 F.2d 1155 (1969).

34. *Ante* p. 943.

35. *Ante* p. 943. See, however, text *supra* at note 33.

36. Notwithstanding the trial judge's preliminary assessment on the propriety of an inference, the jury must make the final decision. "[I]t is the court's function to determine whether a jury could appropriately deduce from the underlying circumstances the adverse fact sought to be inferred," but "it [is] for the jury to say whether the inference actually ought to be drawn in the particular case." Burgess v. United States, *supra* note 23, 142 U.S.App.D.C. at 209, 440 F.2d at 237 (concurring opinion). See also text *supra* at notes 3–5. In the situation my colleagues hypothesize, *ante* p. 943, the jury, before undertaking an inference, must find (a) that the witness was physically available to both parties; (b) that the witness bore a peculiar relationship to one party; (c) that the witness could have given testimony materially helpful to that party; (d) that, in view of the relationship, that party would naturally have called the witness; (e) that the witness was not called because the party to whom the relationship was borne did not dare do so, and (f) that, all circumstances considered, that fear indicates that if called the testimony of the witness would have been unfavorable to the party. Only if the jury reaches each of these conclusions would an adverse inference become legally proper, and if proper the jury would then have to gauge precisely its impeaching effect. See text *supra* at note 32 and accompanying note.

37. See text *supra* at notes 6–8.

38. *Ante* p. 943. See Cooper v. United States, 123 U.S.App.D.C. 83, 85, 357 F.2d 274, 276 (1966) (concurring opinion), and cases cited in note 1 thereof.

39. See text *supra* at note 32. Our decisions have consistently maintained the trial judge's duty to mark out the boundaries within which the jury can legitimately consider evidence admitted for only a limited purpose. United States v. McClain, 142 U.S.App.D.C. 213, 217, 440 F.2d 241, 245 (1971); Jones v. United States, 128 U.S.App.D.C. 36, 38–39, 385 F.2d 296, 298–299 (1967); Coleman v. United States, 125 U.S.App.D.C. 246, 248–249, 371 F.2d 343, 345–346 (1966), cert. denied, 386 U.S. 945, 87 S.Ct. 979, 17 L.Ed.2d 875 (1967); Bartley v. United States, 115 U.S.App.D.C. 316, 318–319, 319 F.2d 717, 719–720 (1963); Wheeler v. United States, 93 U.S.App. D.C. 159, 166 n. 17, 211 F.2d 19, 26 n. 17

A suitable instruction should not be given, I submit, to insure that the jury understands these aspects of the important business it is about.[40]

Three factors, my colleagues say, have bearing on a trial judge's decision to allow a missing witness argument without a missing witness instruction.[41] The first is the judge's estimate that the argument will be understood and given proper treatment by the jury without an instruction. I cannot place confidence in any such judgment where the jury is told nothing about its prerogatives or its limitations in that regard. The second factor is the judge's assessment that the tailoring of an instruction "would be unnecessary and time-consuming." I do not feel that the amount of time required relieves the judge from his duty to formulate and render ample instructions,[42] or that instruction of laymen on their new and unaccustomed responsibilities as jurors is unnecessary. The third factor mentioned is the judge's conclusion that an instruction might be distracting or even counter-productive. If indeed it may be assumed that in particular instances an instruction on missing witnesses can produce those effects, then surely argument by counsel on that subject will do no less.

My view, in a nutshell, is that the missing witness instruction has an office indispensable in missing witness controversies. It tells jurors what they need to know in order to function intelligently in an area fraught with even more difficulties for laymen than for lawyers. It safeguards, as nearly as anything can, the validity of the result the jury reaches, and thus makes a wholesome and essential contribution to the jury's quest for truth. I would not risk diminution of the values the missing witness instruction confers by presuming that sometimes the case may be better off without it.

---

(1953), cert. denied, 347 U.S. 1019, 74 S.Ct. 876, 98 L.Ed. 1140, reh. denied, 348 U.S. 852, 75 S.Ct. 21, 99 L.Ed. 671 (1954).

40. The responsibility for elucidating the applicable law for the jury rests on the trial judge, and that duty cannot be abdicated to counsel's argument. See Wheeler v. United States, *supra* note 41, 93 U.S.App.D.C. at 167, 211 F.2d at 27, and cases cited in note 20 thereof.

41. *Ante* p. 944.

42. The amount of time the framing of an adequate instruction would require is, I submit, quite small. The judge need only incorporate in the standard missing witness instruction the special elements summoned by the particular situation the court's opinion speaks to. See note 36, *supra.*