Robert L. **BROWN**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 21665.

United States Court of Appeals
District of Columbia Circuit.

Argued April 22, 1969.

Decided June 11, 1969.

Mr. Paul S. Quinn, Washington, D. C. (appointed by this court), for appellant. Mr. Leon T. Knauer, Washington, D. C. (appointed by this court), also entered an appearance for appellant.

Mr. Robert S. Bennett, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty. at the time the brief was filed, Frank Q. Nebeker, Asst. U. S. Atty. at the time the brief was filed, and Harold H. Titus, Jr., Asst. U. S. Atty., were on the brief, for appellee. Mr. James E. Kelley, Jr., Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, and WRIGHT and McGOWAN, Circuit Judges.

PER CURIAM:

Appellant was convicted of assault with a dangerous weapon. 22 D.C. CODE § 502 (1967). He claims that the trial judge committed error in giving a missing witness instruction to the jury. We agree it was error, but on the facts of this case we think it was harmless. Accordingly, we affirm the conviction.

## I

The grand jury indicted appellant for assault with intent to commit robbery and assault with a dangerous weapon. The Government's version of the facts, as adduced by its witnesses, was that appellant and a woman came to the apartment of a Mrs. Wilson late one night and demanded that she give appellant $25.00. When she refused, appellant picked up a shotgun which Mrs. Wilson kept on a table in her apartment and pointed it at her. Mrs. Wilson then went next door to ask a neighbor to lend her the money. The neighbor came out with a gun, scuffled with appellant, and then shot him. The police were called and appellant was taken into custody.

Appellant's version was that he and a man named Cliff were at a bar when they met a girl who asked appellant to walk her home. They left, leaving Cliff behind. While they were walking the girl offered to have sexual relations with appellant for $10.00. The girl took appellant to the apartment of Mrs. Wilson. There the girl refused to go ahead with the bargain and refused to return the money. Appellant demanded his money back, and then saw the shotgun. He picked it up, intending to keep it as collateral if the money was not returned. He never pointed the shotgun at anybody. As he walked out the door, Mrs. Wilson got her neighbor who came out with a gun. The neighbor, becoming excited at seeing appellant with the shotgun, shot appellant.

After the evidence the judge asked if there were any special requests for instructions. Appellant's counsel requested that the jury be instructed that, since the Government failed to bring in the girl who was with appellant (the girl had given her name to the police when they arrived at the apartment), the jury could infer that the testimony of the girl would have been detrimental to the Government's version. However, both the Government and appellant had tried, unsuccessfully, to locate the girl, and the judge refused to give such a missing witness instruction against the Government.

After the colloquy about the girl, the judge, on his own, asked: "However, where is Cliff?" Appellant answered that Cliff was at work. The judge then stated that he "wondered" whether the United States Attorney "isn't going to ask for that missing-witness instruction" as to Cliff. The United States Attorney did request such an instruction and the judge, over appellant's objection, charged the jury that since appellant had not brought in Cliff to testify the jury could infer that Cliff's testimony would be adverse to appellant.[1]

After deliberation, the jury returned a verdict of not guilty of assault with intent to commit robbery and guilty of assault with a dangerous weapon. This appeal followed, in which appellant assigned as error the missing witness instruction given regarding Cliff.

## II

 In 1894 the Supreme Court stated the general principle:

"* * * The rule even in criminal cases is that if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable. * * *"

Graves v. United States, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021. The factor at issue here is the requirement that the witness be "peculiarly available" to the party.[2]

1. The full instruction was:

"There has been testimony with respect to a person by the name of Cliff. In that connection, if a witness who could have given material testimony on an issue in this case was peculiarly available to one party and was not called by that party, and his absence has not been sufficiently accounted for or explained, then you may, if you deem it appropriate, infer that the testimony of the witness would have been unfavorable to the party which failed to call him."

2. Appellant also argues that the judge erred by using the phrase "a witness who

As long ago as 1923, this court pointed out that:

> "The general rule is that no such inference may be drawn by a jury because a party fails to call as a witness one who is in a legal sense a stranger to him and is equally available to the other side. * * *"

Egan v. United States, 52 App.D.C. 384, 396, 287 F. 958, 970 (1923) (quoting from state cases). And we have found error in the giving of such an instruction where the witness was equally available to both sides. See Egan, supra; Billeci v. United States, 87 U.S. App.D.C. 274, 278–279, 184 F.2d 394, 398–399, 24 A.L.R.2d 881 (1950).[3]

Thus before a missing witness instruction can be given against a defendant there must be a showing that the witness was not available to be subpoenaed by the Government. In the recent case of Wynn v. United States, 130 U.S. App.D.C. 60, 64–65 n. 23, 397 F.2d 621, 625–626 n. 23 (1967), we reiterated this requirement, noting there the absence of certain critical facts:

> "Among the circumstances which do not appear are the extent of appellant's knowledge of the whereabouts of the witnesses at the time of trial; their then physical amenability to subpoena; and, on the other hand, the Government's opportunities to itself call them after learning of their identity, either before or during trial. * * *"

The trial judge should make an inquiry on this point before giving the instruction. See Stewart v. United States, U.S. App.D.C. (No. 20,983, decided February 10, 1969).

█ In this case there is no indication that the witness was available to appellant but not to the Government. The Government did not even appear to be pursuing the matter until the trial judge suggested that he would be amenable to a request by the Government.[4] When the judge asked appellant where the witness was, appellant answered, "He's at work, Your Honor." The judge accepted this answer, pointing out to appellant, "He's at work, yes; so you know where he is." The judge then used this information to infer that the witness was available to appellant. However, it is clear that if appellant's statement was

---

could have given material testimony on an issue in this case" rather than the phrase "elucidate the transaction." We think the distinction insignificant. However phrased, the requirement is that the witness be an important part of the party's case, that his testimony be noncumulative, and that it be superior to other testimony already given on the matter. Morton v. United States, 79 U.S. App.D.C. 329, 332 n. 11, 147 F.2d 28, 31 n. 11, cert. denied, 324 U.S. 875, 65 S.Ct. 1015, 89 L.Ed. 1428 (1945).

Further, of course:

"where it cannot reasonably be supposed or inferred that the missing witness would have supported the defendant's account, even if true, we do not think there is any legitimate basis for comment on defendant's failure to call the missing witness."

Pennewell v. United States, 122 U.S.App. D.C. 332, 333, 353 F.2d 870, 871 (1965). (In Pennewell the defendant's story was that the missing witness, not defendant, had committed the crime.)

3. We do not have in this case the issue whether, even where the witness is physically available to both sides, the presumption attaches and the instruction can be given nonetheless because the party is in a special relation to the witness and the witness could be expected to be hostile to the other party. See Richards v. United States, 107 U.S.App.D.C. 197, 275 F. 2d 655, cert. denied, 363 U.S. 815, 80 S. Ct. 1253, 4 L.Ed.2d 1155 (1960). Here there is no claim that the witness was in a special relationship (such as employer-employee) to appellant.

4. Where the propriety of an instruction is far from clear, the action of a judge in suggesting that one be requested is unsound. In Egan v. United States, 52 App.D.C. 384, 395–396, 287 F. 958, 969– 970 (1923), we said:

"* * * We think it was erroneous for the court to call attention to the absence of Kramer and Adams, inasmuch as their absence had not been suggested, either by the district attorney or by counsel for the defendant. * * *"

true, the witness was equally available to the Government. In the absence of a showing to the contrary, it was error to have given the missing witness instruction.

### III

 The question remains whether the error requires reversal. The fact that the instruction was not only objected to below, but was actually invited by the trial court, militates in favor of a new trial. However, while the question is a close one in view of all the circumstances, we think the error was harmless. Cliff's testimony was relevant, if at all, only to the counts charging an intent to rob, and appellant was acquitted on these counts. The instruction thus served at most to cast doubt on appellant's general credibility. In a case where the defendant's credibility is crucial, we could not ignore that consequence. But it is extremely unlikely that even without the missing witness instruction a jury would credit appellant's story, contradicted by two witnesses, that he picked up Mrs. Wilson's gun only as collateral for a debt. Accordingly, we find no real possibility of prejudice.

Affirmed.