**UNITED STATES of America**

**v.**

**Irvin L. STEVENSON, Appellant.**
**UNITED STATES of America**

**v.**

**Bernard I. WHITE, Appellant.**

**Nos. 22924, 22925.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 20, 1970.

Decided March 3, 1970.

Fahy, Senior Circuit Judge, dissented in part.

------◆------

Mr. Joel Chasnoff, Washington, D. C. (appointed by this court) for appellants.

Mr. Julius A. Johnson, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee. Mr. David G. Bress, U. S. Atty., at the time the record was filed, also entered an appearance for appellee in No. 22,924. Mr. Roger E. Zuckerman, Asst. U. S. Atty., also entered an appearance for appellee.

Before FAHY, Senior Circuit Judge, and TAMM and MacKINNON, Circuit Judges.

TAMM, Circuit Judge:

Answering a radio dispatch which reported people breaking into a store (Tr. 16), two police officers arrived at the Mosby Jewelry Store at 1421 U Street, N.W. in Washington, at approximately 5:00 a. m. on June 18, 1968. Their arrival directly in front of the store was about "one minute" after receipt of the radio call. (Tr. 17.) It was "light." (Tr. 17.) Upon arrival, with their car facing the jewelry store, they saw through the windshield a broken window in the store and "three or four" men standing in front of the broken window who were "reaching in through the window, grabbing items. Other ones were bending down picking items up off the pavement." (Tr. 38.) The squealing brakes of the police car caused the three or four men to turn towards the police car and "beg[in] to run." (Tr. 40.) One of the police officers, Officer Farr, observed that appellant White "had reached through and was looking at what I believed to be some kind of a medallion, a stringy object of jewelry, looked like a medallion and when he turned around he dropped it and ran." (Tr. 40–41.) Officer Farr observed appellant Stevenson "reaching through the window, grabbing hands full of things and be [sic] alternating between sticking it in his pocket and sticking it in a little bag he was carrying. He did the same thing, began to move away, running toward the same direction * * *." (Tr. 41.)

Officer Farr pursued both appellants, apprehended appellant White, and "a few feet on down further" apprehended appellant Stevenson and placed both under arrest. (Tr. 41.) A search of White did not disclose anything "taken from the store," but a search of Stevenson's person resulted in the finding of "two little paper sacks full of articles," and "numerous articles stuffed in his pockets of his coat and his pants" (Tr. 42) which were subsequently identified as store property by the proprietor, Mr. Mosby. (Tr. 80–82.) A third person, pursued by the second officer, Adams, was not apprehended. (Tr. 27–28.)

Upon these facts, appellants White and Stevenson were both charged in a two-count indictment with burglary II (22 D.C.Code § 1801(b) (Supp. II 1969)) and petit larceny (22 D.C.Code § 2202 (1967)). A jury found Stevenson guilty on both charges but convicted White only of burglary.

I

We are urged by appellants' court-appointed counsel to reverse these convictions, first on the ground that the evidence was insufficient to permit the submission of the case to the jury on charges of second degree burglary. We cannot credit this argument because the testimony of Officer Farr, standing alone, was sufficient to establish a prima facie case for the Government. The defense

of each appellant was an attempt to justify his casual presence in front of the jewelry store at the time of the officers' arrival, augmented by Stevenson's testimony that he was arrested while picking up a bag of jewelry which he noticed near a truck parked in front of the store. Certainly upon this record the trial judge was required to deny appellants' motion for a judgment of acquittal at the termination of the Government's case-in-chief. Thereafter the appellants' testimony raised issues of fact which could be resolved only by the jury. Exercising their recognized responsibility for evaluating the relative credibility of the witnesses, the jury accepted the police officers' testimony and rejected the appellants' versions. We conclude that as indicated the Government's case was sufficient for submission to the jury, and the verdict as found by the jury is supported by substantial evidence.

## II

▮ Next we are asked to characterize the prosecuting attorney's closing arguments as exceeding permissible bounds, constituting "plain error," and requiring reversal. We have had too frequent occasion to express our concern that in the heat of trial Government counsel does at times abandon the limits of professional advocacy and indulge in verbal outbursts which are factually inaccurate, improper in form, prejudicial in phraseology, or illegal in substance. *See generally* United States v. Hayward, 136 U.S.App.D.C. 300, 420 F.2d 142 (Nov. 18, 1969); Gass v. United States, 135 U.S.App.D.C. 11, 416 F.2d 767 (1969); Gibson v. United States, 131 U.S.App. D.C. 163, 403 F.2d 569 (1968); Harris v. United States, 131 U.S.App.D.C. 105, 402 F.2d 656 (1968); Corley v. United States, 124 U.S.App.D.C. 351, 365 F.2d 884 (1966). These cases illustrate our concern for and sensitivity to any overreaching by prosecutors in their arguments, and define the standards which must govern in this area.

The substance of the argument challenged herein arose as a result of the obvious conflict between the testimony of the officers and the testimony of the appellants. Government counsel advised the jury in substance that if they believed appellants' testimony, then they must conclude that the police officers are "out-and-out liars." (II Tr. 30.) The logic of this reasoning—that if the jury accepted the appellants' testimony as truthful it must reject the officers' testimony as untruthful—is unquestionable. We have, as the above-cited cases reflect, looked unfavorably upon counsel's characterization of a witness as a "liar," but the resulting prejudice, if any, must be evaluated in the full context of the questioned statement. Here, if counsel had argued that the jury could not accept both sets of testimony but must, under the guidelines contained in the court's charge, determine which witnesses were and which witnesses were not telling the truth, we doubt that any contention could be made that prejudice to the defendants resulted. The phraseology of the challenged statement herein does not commend itself to us as a model of restrained comment, but we do not consider that upon the entire record it rises to the status of plain error. We note that defense counsel made no objection to the argument in the trial proceedings, and consequently, we must evaluate the record on the basis of our holding in Harris v. United States, *supra*. Probing further, however, we note that insofar as counsel's suggestion of untruth was concerned, it was addressed to the Government's witnesses. Without in any way making a determination of prejudice dependent upon an exercise in semantics alone, we conclude that the challenged argument was not so prejudicial as to require, or justify, reversal.

▮ Further challenge in this area is addressed to portions of the argument in which Government counsel used the phrases "lucky enough to catch somebody right in the act" and to "catch them red-handed" in describing the case on the basis of the police officers' testimony. (II Tr. 16.) The quoted words, read in the full context of the argument, cannot

in our view be condemned as being so prejudicial as to constitute "plain error." We note further that the trial judge's admonition to the jury cautioned them that the closing arguments "do not constitute evidence in the case," but rather were merely discussion of "that part of the evidence to which [the attorneys] thought you should give special consideration." (II Tr. 33.) Certainly Government counsel was justified and required by his responsibility to point out to the jury that the police officers, by their testimony, had witnessed the commission of the act charged in the indictment.

## III

■ Appellant White's testimony was, in substance, that he departed from his employment in a restaurant called "Wings and Things" located some five doors from the intersection of 14th and U Streets, N.W., at approximately 5:10 a. m., and was accompanied in his walk to the site of the jewelry store by a fellow employee, Miss Ferda Brewer. (Tr. 96–98.) White testified that for some four minutes he and Miss Brewer watched a man obtaining jewelry from the store window and that they then continued towards Miss Brewer's residence in a hotel at the corner of 15th and U Streets, but that he was arrested while bent over to tie his shoes, en route to the hotel. (Tr. 99–102.) On cross-examination White identified a "Mr. Burke" as the assistant manager responsible for closing "Wings and Things" at 5:00 a. m. (Tr. 109.) Neither Miss Brewer nor Burke was called as a witness in the case, although cross-examination elicited some information as to their present or past employment and residence addresses. (Tr. 107, 109–110.)

In her charge to the jury, the trial judge included the "missing witness charge." [1] We are asked now, primarily upon the basis of our recent opinion in Brown v. United States, 134 U.S.App. D.C. 269, 414 F.2d 1165 (1969), to rule that it was reversible error for the court to give this charge. Counsel on appeal cites from the *Brown* case, as controlling our present situation, the following statement: "Thus before a missing witness instruction can be given against a defendant there must be a showing that the witness was not available to be subpoenaed by the Government." (134 U.S. App.D.C. 271, 414 F.2d at 1167.) On the record before us there is nothing whatsoever to indicate that the Government knew of the possible testimony to come from either Miss Brewer or Mr. Burke, or that their names would be brought out in evidence as having any knowledge of the facts in this case. Moreover, the Government's brief affirmatively states that the "identity and whereabouts" of Miss Brewer were developed only during trial (Brief for Appellee at 10), and appellants' brief, rather than refuting this point, affirmatively recounts that "after learning of their identity and location during trial, the Government made no effort to call them." (Brief for Appellants at 19.) Insofar as the application of the quoted sentence of the *Brown* opinion is concerned, we decline to apply its impact to any case in which the Government learns of the possible identity and location of potential witnesses during the course of a trial, in the absence of some showing of special and major circumstances requiring such application. We find no such circumstances in this case.

■ Despite our broad holding in the *Brown* case, it is the responsibility of defense counsel to know the identity of possible witnesses who may be useful to a defendant's case and to make reasonable efforts, with Government assist-

---

1. II Tr. 37–38:
   If a witness who could have given material testimony on an issue in this case was peculiarly · available to one party, was not called by that party and his or her absence has not been suffi-
   ciently accounted for or explained, then you may, if you deem it appropriate, infer that the testimony of the witness would have been unfavorable to the party which failed to call him or here [*sic*].

ance if necessary, to locate and subpoena them. Criminal trials remain a search for truth, but to allow a defendant to identify from the witness stand for the first time the name of a possible witness, and thereafter to penalize the Government for its failure to produce that witness, is, even in this era of resolving all procedural and evidentiary problems against the Government, basically repugnant to the necessary principle that a trial must be fair to both the defendant and the Government.

■ We decline also to extend the doctrine of *Brown* to any case in which the "missing witness" would testify only on matters relating solely to an alibi or other defense wherein the alleged facts are solely in the possession of the defendant and are completely unknown to the Government. In so doing we do not, however, absolve the Government of its responsibility to make known to defense counsel any information in its possession which would be advantageous to the defendant.

We therefore conclude that the missing witness instruction was not improperly given in this case.

### IV

■ Finally, we are asked to rule that the trial court's instruction "on flight" [2] was erroneous since, under our holding in Austin v. United States, 134 U.S. App.D.C. 259, 414 F.2d 1155 (1969), it did not provide a "fuller explanation by the judge of the variety of motives which might prompt flight * * *." (134 U.S.App.D.C. 261, 414 F.2d at 1157.) The short answer to this argument is that our opinion in *Austin* was issued on May 27, 1969, but our appellants were tried in December 1968, the charge to the jury having been given on December 30, 1968. We do not believe that this

court's ruling in *Austin* on the substance to be included in charges explaining the significance and weight of flight should be retroactive and thus applicable to cases tried prior to the issuance of our opinion.

■ A further, and independent, ground for disposition of this contention is that, as in *Austin,* defense counsel did not make any objection to this charge as it was given, and the error was harmless. Rules 30 and 52 Fed.R.Crim.P.

Affirmed.

FAHY, Senior Circuit Judge (concurring in part, dissenting in part):

I concur in affirmance of the conviction of appellant Stevenson. As to appellant White, however, I would reverse for a new trial.

The evidence against Stevenson was so strong that the errors to which I shall refer should be deemed harmless as to him. He was quickly arrested with a number of articles taken from the store. White was also promptly arrested, but no stolen article was found in his possession.

The Government did not rely solely upon the testimony given at trial. It was supplemented by two instructions requested by the Government and to which I now refer. One was on flight, the other based on the absence of a possible witness. Instructions of this kind, used to strengthen a case beyond that which resides directly in the evidence, should be sparsely used and carefully composed. Austin v. United States, 134 U.S.App. D.C. 259, 414 F.2d 1155, involving instructions on flight, and *see* Brown v. United States, 134 U.S.App.D.C. 269, 414 F.2d 1165, involving instructions under the missing witness rule. In the present case each of the two instructions

---

2. II Tr. 46:

Flight by the defendant or defendants, after a crime has been committed, does not create a presumption of guilt. You may consider evidence of flight, however, as tending to prove the defendant's consciousness of guilt. You are not re-

quired to do so. You should consider and weigh the evidence of flight by the defendant or defendants in connection with all of the other evidecne [sic] in the case and give it such weight as in your judgment it is fairly entitled to receive.

referred to failed to meet the standards, respectively, of *Austin* on flight, and *Brown* on the missing witness rule. In *Austin* this court disapproved an instruction on flight which was in the same terms as that given in this case; and in *Brown* we said with respect to a missing witness problem:

> Thus before a missing witness instruction can be given against a defendant there must be a showing that the witness was not available to be subpoenaed by the Government. In the recent case of Wynn v. United States, 130 U.S.App.D.C. 60, 64–65 n. 23, 397 F.2d 621, 625–626 n. 23 (1967), we reiterated this requirement, noting there the absence of certain critical facts:
>
> > "Among the circumstances which do not appear are the extent of appellant's knowledge of the whereabouts of the witnesses at the time of trial; their then physical amenability to subpoena; and, on the other hand, the Government's opportunities to itself call them after learning of their identity, either before or during trial. * * *"
>
> The trial judge should make an inquiry on this point before giving the instruction. *See* Stewart v. United States, 135 U.S.App.D.C. 274, 418 F. 2d 1110 (decided February 19, 1969).

*Brown, supra,* 414 F.2d at 1167.

These requirements were not met in this case. No inquiry as thus required was made. I adhere to the position this court has previously taken.

As to White the jury might have doubted both the accuracy of the officer's identification among the several persons at the scene and, also, the sufficiency of the testimony that any "breaking" could be laid to White, essential to a conviction of burglary.* I cannot say with any confidence that the strength erroneously added to the case against White by the instructions referred to, especially that on flight, did not significantly influence the verdict against him. I refer especially to the instruction on flight because the circumstances of the officers' unexpected arrival in the vicinity of the group could well have led to White's flight for reasons other than a consciousness of guilt of conduct later charged to him as criminal. Cooper v. United States, 94 U.S.App.D.C. 343, 218 F.2d 39; Miller v. United States, 116 U.S.App.D.C. 45, 320 F.2d 767; Austin v. United States, *supra.*

On the whole case, as to White, I consider the errors in the instructions open for review under Rule 52(a), Fed.R. Crim.P.

---

* He was acquitted of the charge of petit larceny.