**David B. SHELTON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 12610.**

District of Columbia Court of Appeals.

Argued April 12, 1978.

Decided June 8, 1978.

Robert J. Murphy, North Springfield, Va., appointed by this court, for appellant.

Jerry D. Bernstein, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Sallie H. Helm, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN, GALLAGHER and YEAGLEY, Associate Judges.

KERN, Associate Judge:

Appellant was found guilty by a jury of two counts of armed robbery in violation of D.C.Code 1973, § 22–2901, for which he was sentenced to concurrent terms of incarceration of seven to twenty-five years. On appeal he contends (1) that the use of substitute counsel to represent him at a pretrial lineup violated his Sixth Amendment right to assistance of counsel, and (2) that the trial court committed reversible error in giving to the jury a "missing witness" instruction over his objection. We affirm the convictions.

This case arose from the robbery on August 3, 1976, of two individuals, Kenneth David and Candice Fenna, who were attending a professional photographers' convention at the Sheraton-Park Hotel. Around 2 a. m., they left the convention to get some fresh air. As they walked through a well-lighted garden area directly in front of the hotel, two young men, who were dressed in busboy jackets, approached them. One of the men pulled a gun and demanded that they hand over their money. After they had done so, their assailants fled.

Two days after the robbery appellant was arrested in Prince George's County, Maryland, on charges of using stolen credit cards bearing the name of Kenneth R. David. At the time of his arrest, appellant told the police he had taken these cards from a drunk who had passed out in front of the Shoreham-Americana Hotel.

At trial, appellant presented an alibi defense. He stated that at the time of the robbery he was with his girlfriend, Vera Brown, celebrating her birthday. Ms. Brown corroborated his story, testifying that he had spent the entire night of August 3, 1976, at her apartment. She further testified that she stayed up all that night playing cards and talking with a girlfriend, "Gail," who at that time lived down the hall from her but whose last name she did not know. Appellant also presented another witness, Jose Vega, who testified that he had seen appellant and Vera Brown enter the building before midnight and did not see appellant again that night, although he had remained outside the building until around 3 a. m. on August 3.

Because the victims had been very frightened, neither of them got a good look at the man who held the gun. After the robbery, however, Mr. David remembered that the other man had a young, smooth face and an unusually broad nose, and Ms. Fenna described this other man as much shorter than the one who held the gun, with a very dark complexion, a medium-sized "afro" hairstyle, a wide flat nose, and a round face. Subsequently, Mr. David testified at trial that he would be unable to recognize the men who robbed him, but Ms. Fenna identified appellant in court as the man without the gun. Previously, on October 5, 1976, she had similarly selected appellant from a lineup.

Appellant's first contention is that the trial court erred in admitting testimony of his identification at a lineup which was conducted on October 5, 1976, without the presence of counsel assigned to represent him. Specifically, he argues that the lack of notice to his appointed attorney and the use of substitute counsel to represent him

at the lineup violated his Sixth Amendment right to effective assistance of counsel.

Two times prior to October 5 appellant had been ordered by the court to stand in a lineup, and his counsel had received notification of the orders. On both of those occasions, however, the lineups were cancelled because the complaining witnesses, who lived in New England, were unable to attend. In order to minimize the inconvenience to these witnesses, the prosecutor therefore decided to submit the case to the grand jury, have the grand jury vote whether or not to direct the defendant to appear in a lineup, and then have appellant placed in a lineup shortly thereafter if the grand jury so voted. Consequently, on October 5, 1976, Candice Fenna and a police officer testified, and the grand jury issued a directive instructing appellant to stand in a lineup later in the evening.[1] The prosecutor then personally delivered the directive to appellant.

Although the grand jury directive included a statement that defense counsel had received notice of the lineup, and although the prosecutor testified that she was satisfied that efforts had been made to advise him of the lineup, the trial court found that, in fact, he had not received notification. Subsequently, an attorney whom the trial court found to be "experienced . . . in the practice of criminal law" represented appellant at the lineup. Substitute counsel made no objections to the procedure or composition of the lineup, and the trial court, after viewing a video tape of the lineup, concluded that it had not been suggestive.

■ Appellant cites *United States v. Wade*[2] and *Gilbert v. California*,[3] in support of the proposition that the use of substitute counsel at the lineup violated his Sixth Amendment rights. It is the explicit rule in this jurisdiction, however, that the use of substitute counsel does *not* violate the defendant's right to counsel. *United States v. Randolph*, 143 U.S.App.D.C. 314, 317, 443 F.2d 729, 732 (1970); *United States v. Queen*, 140 U.S.App.D.C. 262, 263, 435 F.2d 66, 67 (1970); *United States v. Kirby*, 138 U.S.App.D.C. 340, 344, 427 F.2d 610, 614 (1970).[4] The text of the *Wade* opinion specifically "suggests that substitute counsel might be adequate 'where notification and presence of the suspect's own counsel would result in prejudicial delay,'" *United States v. Kirby, supra* at 343, 427 F.2d at 613; quoting *United States v. Wade*, 388 U.S. 218, 237, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The accompanying footnote states that "the presence of substitute counsel is adequate if it serves to 'eliminate the hazards which render the lineup a critical stage for the presence of the suspect's own counsel.'" *Id., quoting United States v. Wade, supra* at 237 n. 27, 87 S.Ct. 1926, 1938. The Supreme Court focused on two such hazards in *Wade*: the possibilities for prejudice at the lineup itself, and the absence of a meaningful confrontation at trial if trial counsel is unaware of deficiencies in the lineup. *United States v. Wade, supra* at 236–37, 87 S.Ct. 1926. *See United States v. Smallwood*, 153 U.S.App.D.C. 387, 391, 473 F.2d 98, 102 (1972) (Bazelon, C. J., concurring); *United States v. Johnson & Estes*, 147 U.S. App.D.C. 31, 34, 452 F.2d 1363, 1366 (1971), *aff'd following remand*, 158 U.S.App.D.C. 299, 485 F.2d 1078 (1973), *cert. denied*, 415 U.S. 923, 94 S.Ct. 1426, 39 L.Ed.2d 478 (1974).

*M.A.P. v. Ryan*, D.C.App., 285 A.2d 310, 312 (1971). The circuit court of appeals for the District of Columbia has subsequently reaffirmed the principle that substitute counsel does not violate the defendant's rights. *See United States v. Smallwood*, 153 U.S.App.D.C. 387, 389, 473 F.2d 98, 100 (1972); *United States v. Johnson & Estes*, 147 U.S.App.D.C. 31, 34, 452 F.2d 1363, 1366 (1971), *aff'd following remand*, 158 U.S.App.D.C. 299, 485 F.2d 1078 (1973), *cert. denied*, 415 U.S. 923, 94 S.Ct. 1426, 39 L.Ed.2d 478 (1974).

---

1. On October 18, 1976, the grand jury indicted appellant for the robbery.

2. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

3. 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

4. *Randolph, Queen* and *Kirby* are binding upon this court since they were decided prior to February 1, 1971, the effective date of the District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L. No. 91–358.

In this case the prosecution at the time of the lineup believed that defense counsel had received notification. Thus, there is no question here of prosecutorial misconduct and, as in *Kirby*, substitute counsel was used only because of an administrative mistake. *See United States v. Kirby, supra* at 344. As we noted above, it had been necessary to cancel two previously-scheduled lineups because the complaining witnesses had been unable to come to Washington; as those experiences indicated, to have cancelled the October 5 lineup would have caused further delay in proceeding to trial. Such a result ultimately could have prejudiced both appellant and the government. The defendant here was represented at the lineup by competent substitute counsel, and it is clear that neither the procedure nor the composition of the lineup were suggestive. Furthermore, there was no absence of meaningful confrontation at trial, for appellant fully raised the issue in a motion to suppress the lineup identification. Because there is convincing evidence in the record which supports the trial court's findings and conclusions, we therefore affirm the denial of the motion. *See* D.C.Code 1973, § 17–305(a).[5]

Appellant's second contention is that the trial court committed reversible error in giving a "missing witness" instruction, over his objection, with respect to "Gail," a person who, according to defense testimony, was present with appellant at his girlfriend's apartment on the night of the robbery. The missing witness doctrine permits the trial court to instruct the jury that if the testimony of a particular witness could "elucidate the transaction" at issue, and if that witness is peculiarly available to one of the parties, then the jury may infer that the testimony, if produced, would be unfavorable to the party who fails to produce the witness.[6] Although the instruction is inappropriate unless both prerequisites—*i. e.*, elucidation and peculiar availability—are present, *Wynn v. United States*, 130 U.S.App.D.C. 60, 64, 397 F.2d 621, 625 (1967), questions as to the presence of these conditions are factual determinations for the trial judge. *See United States v. Scott*, 150 U.S.App.D.C. 323, 325, 464 F.2d 832, 834 (1972); *United States v. Craven*, 147 U.S. App.D.C. 383, 386, 458 F.2d 802, 805 (1972); *Burgess v. United States*, 142 U.S.App.D.C. 198, 205, 440 F.2d 226, 233 (1970). Consequently, the trial court has considerable latitude in determining "whether from all the circumstances an inference of unfavorable testimony from an absent witness is a natural and reasonable one." *Burgess v. United States, supra* at 206 & n. 11, 440 F.2d at 234 & n. 11. *See (Kenneth) Smith v. United States*, D.C.App., 343 A.2d 40, 44 (1975); *United States v. Ferguson*, 162 U.S.App. D.C. 268, 275–76, 498 F.2d 1001, 1008–09, *cert. denied*, 419 U.S. 900, 95 S.Ct. 183, 42 L.Ed.2d 145 (1974); *Morrison v. United*

---

5. Appellant argues that he was prejudiced because substitute counsel failed to advise him that he was not required to stand in the line *since it had been ordered by the grand jury rather than the court.* He offers, however, no showing that substitute counsel was unaware that the lineup was authorized by grand jury directive rather than a court order. Furthermore, during oral argument appellant's counsel conceded that there is no evidence in this record which *would have supported a court's refusal to order the defendant to stand in the lineup.* Upon this record, the failure of substitute counsel to challenge the lineup on the ground that it had been ordered by the grand jury rather than the court is not the sort of ineffectiveness of counsel which is subject to appellate review. *See Williams v. United States*, D.C.App., 374 A.2d 885, 890 (1977); *Mitchell v. United States*, 104 U.S.App.D.C. 57, 63, 259 F.2d 787, 793, *cert. denied*, 358 U.S.

850, 79 S.Ct. 81, 3 L.Ed.2d 86 (1958). Since appellant was effectively represented, the use of substitute counsel did not violate his Sixth Amendment rights.

6. In this case the trial judge instructed the jury:

If a witness who could give material testimony on an issue in this case was peculiarly within the power of one party, and his absence has not been sufficiently accounted for or explained, then you may, if you deem it appropriate, infer that the testimony of the witness would have been unfavorable to the party which failed to call him. However, no such inference should be drawn by you with regard to a witness who was equally within the power of either party to produce, or whose testimony would have been merely cumulative or immaterial.

*States,* 124 U.S.App.D.C. 330, 333, 365 F.2d 521, 524 (1966). Upon an examination of the present record, we find no abuse of discretion in granting the requested instruction.

At trial appellant's girlfriend, Vera Brown, testified that Gail and appellant were with her celebrating her birthday on the night of the robbery, and that she and Gail stayed up the entire time talking and playing cards while appellant slept on a mattress in the room with them. Appellant also testified that Gail had been there. If the defense evidence is to be believed, this witness therefore could have pinpointed appellant's whereabouts at the time of the robbery. Thus, her testimony clearly would have elucidated the transaction. *See Hale v. United States,* D.C.App., 361 A.2d 212, 216 (1976).[7]

Even where an absent witness could explain an incident, the giving of a missing witness instruction is not proper, however, if the testimony would have been merely cumulative. *Nowlin v. United States,* D.C.App., 382 A.2d 9, 12 (1978); *Anderson v. United States,* D.C.App., 352 A.2d 392, 394 n. 4 (1976); *Morton v. United States,* 79 U.S.App.D.C. 329, 332 n. 11, 147 F.2d 28, 31 n. 11, *cert. denied,* 324 U.S. 875, 65 S.Ct. 1015, 89 L.Ed. 1428 (1945). In this case, however, the testimony of Gail would have been more than cumulative; indeed, it would have been superior to that of the defense witnesses who actually appeared. Unlike Jose Vega, who could say only that he had been outside the building and had seen appellant enter but had never seen him leave, Gail presumably would have testified that appellant was actually in her presence at the time of the robbery. In addition, the jury could have found the testimony of Gail

to have been more credible than that of either of the other alibi witnesses, *i. e.,* appellant himself (whose testimony could have been considered self-serving), and his girlfriend, Vera Brown (whose testimony could have been interpreted as biased in his favor). Thus, Gail's presence would have created a stronger defense case. The principle of the missing witness doctrine is that the "nonproduction of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its tenor is unfavorable to the party's cause." *Stewart v. United States,* 135 U.S.App.D.C. 274, 279, 418 F.2d 1110, 1115 (1969), *quoting* 2 J. Wigmore, Evidence § 286 at 162 (3d ed. 1940). *See Burgess v. United States, supra,* 142 U.S. App.D.C. at 208–09, 440 F.2d at 236–37 (Robinson, J., concurring). Under the circumstances of the instant case, the testimony of Gail would have truly elucidated the transaction. The inference from her absence that her testimony would have been unfavorable consequently would have been a natural and reasonable one, and so the missing witness instruction was appropriate.

Appellant contends, however, that the second requirement of the missing witness rule was not present in this case because Gail was not peculiarly available to him. It is error to give a missing witness instruction where the witness is equally available to both parties. *Egan v. United States,* 52 App.D.C. 384, 396, 287 F.2d 958, 970 (1923). In a variant of this principle, appellant argues that the missing witness instruction was incorrect in this case because, although Gail was unavailable to the prosecution,[8] she was equally unavailable to

---

7. Since appellant has not addressed this component of the missing witness rule either at trial or on appeal, he apparently concedes that the witness would have elucidated the transaction.

8. In granting the missing witness instruction the trial court noted that Gail had not been available to the prosecution, for her "name was not given to the Government, the Government had no way of interviewing her. . . . "

Although a missing witness instruction should not be given if the prosecution could have used a subpoena to acquire the testimony of a witness, *see Brown v. United States,* 134 U.S.App. D.C. 269, 271, 414 F.2d 1165, 1167 (1969); *Morton v. United States, supra,* 79 U.S.App.D.C. at 332, 147 F.2d at 31, nevertheless, the use of a subpoena is not required where the identity of a potential witness is discovered only during the course of the trial. *See United States v. Stevenson,* 138 U.S.App.D.C. 10, 13, 424 F.2d

the defense. In support of this proposition, he reiterates the testimony of Vera Brown that although the absent witness was a girlfriend who had lived in the same rooming house with her and had helped her celebrate her birthday, she did not know Gail's last name. Furthermore, she did not know where Gail lived at the time of the trial because the rooming house had been closed for renovation, all of the occupants had been required to move out, and she did not know Gail's new address. The record reveals also that Gail was not a close friend of appellant, for he testified, "I don't know her personally, I seen her around a few times."

■ Under circumstances such as these, where the absent witness' surname and address at the time of trial are unknown, the missing witness instruction should not be given if there is evidence in the record that the party has made a bona fide effort to locate the witness. *See Nowlin v. United States, supra* at 13; *(Raymond) Smith v. United States*, D.C.App., 315 A.2d 163, 168, *cert. denied*, 419 U.S. 896, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974); *Stewart v. United States, supra*, 135 U.S.App.D.C. at 279, 418 F.2d at 1115. In the present case, however, as the trial court noted, appellant made "no showing that there was *any* effort made even to locate her." (Emphasis added.)[9] In the absence of such a showing, the evidence in this record supports the trial court's conclusion that the missing witness was peculiarly available to appellant, and the challenged instruction was properly given. *See Hale v. United States, supra* at 216 & n. 7; *Anderson v. United States, supra* at

923, 926 (1970). Thus, Gail was clearly unavailable to the government.

9. Indeed, the record supports the inference that in fact appellant had made no attempt to locate Gail. Immediately after the trial court's comment above, the prosecuting attorney noted that "two of the defendant's own witnesses [Vera Brown and Jose Vega] testified that they knew precisely which room in that house the witness had lived in, and could therefore have had access to rental reports, which could have supplied information for them." The defense attorney replied:

394 n. 2 (although appellant claimed to know the missing witness only by a nickname, from the evidence at trial it appeared not unlikely that he could have identified and located the witness); *United States v. Craven, supra*, 147 U.S.App.D.C. at 386, 458 F.2d at 805 (although appellant had known the two missing witnesses only by their nicknames, and although he did not know where they lived except that one of them was in jail, "it appeared not unlikely that he could have identified and located at least the witness in jail had he desired to do so").

*Affirmed.*

She was just a casual acquaintance. They never knew her last name. There is no testimony that records were kept, or the current address of this witness.

Further, there is no testimony whatsoever that we have not made an attempt to locate her.

The prosecutor observed:

I am sure the Court would have accepted a proffer from the defense counsel . . . had one been able to be made.

Although trial counsel was thus presented with an ideal opportunity to explain his own or his client's bona fide efforts to reach the absent witness, *he did not reply.*