**Frederick D. COOMBS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 11804.**

District of Columbia Court of Appeals.

Argued Dec. 6, 1977.

Decided April 2, 1979.

---

John G. Gill, Jr., Rockville, Md., with whom Thomas J. Sippel, Rockville, Md., was on the brief, for appellant.

William J. Cassidy, Jr., Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Roger M. Adelman, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge and MACK and FERREN, Associate Judges.

MACK, Associate Judge:

Following a jury trial, appellant was found guilty of robbery and kidnapping in violation of D.C.Code 1973, §§ 22–2901 and –2101. On appeal, he assigns as error 1) the "missing witness" instruction given to the jury by the trial court, 2) the admission of evidence of other crimes relating to the rape and robbery of another victim, and 3) the admission of rebuttal evidence concerning appellant's claimed military service. Because we have concluded that the giving of the missing witness instruction resulted in prejudicial error requiring reversal, we do not reach the other assignments of error.[1]

### I.

This case arose from the rape and robbery of a prostitute, Valerie Wilson, in the early morning hours of July 23, 1975. The government's witnesses, including the victim and an accomplice, one John Graham,[2] offered evidence that Graham, according to a prearranged plan to "trick a prostitute," picked up Ms. Wilson in his car at approximately 1:00 a. m. at 14th and N Streets, N.W.—ostensibly for a business date. He drove to a parking lot at Vermont Avenue and N Streets, N.W. where appellant, with a gun, appeared to rob both Graham and Ms. Wilson. Appellant then ordered Graham to drive to the seven hundred block of I Street where he proceeded, while fully clothed, to rape Ms. Wilson. After searching her pocketbook and finding her identification card, appellant told her to leave thirty dollars in a phone booth next to the Greyhound terminal or he would come back and harm her. Shortly after releasing the victim, Graham and appellant met and Graham received his share of the proceeds of the robbery.

The government also sought and received approval of the court to introduce evidence as to the robbery and rape of another prostitute, Justine Stephenson—events which had formed the basis in the original indictment, for counts dismissed for want of prosecution when Ms. Stephenson had twice failed to appear for trial. These other crimes, introduced as evidence pursuant to *Drew v. United States,* 118 U.S.App.D.C.

---

1. As to the third assignment of error, we note that the government conceded in its brief and oral argument that the challenged rebuttal testimony by an officer of the armed force police was hearsay and therefore not admitted in a procedurally correct manner.

2. Mr. Graham, named as a codefendant in the original indictment, entered a plea of guilty to carrying a pistol without a license in violation of D.C.Code 1973, § 22–3204.

11, 331 F.2d 85 (1964),[3] were committed on the afternoon of July 22, 1975 after Ms. Stephenson was approached by appellant at 1:00 p. m. in the vicinity of 14th Street and Logan Circle.[4] This victim entered appellant's car and they proceeded to a parking lot where appellant pulled a gun and robbed her. Thereafter appellant drove out of the parking lot and proceeded to O Street when Graham appeared and asked him for a ride to D.C. General Hospital. All three drove to Fort Dupont Park where appellant ordered Ms. Stephenson at gunpoint out of the car and raped her, meanwhile remaining fully clothed. Graham, according to his role, appeared to offer help to Ms. Stephenson. Appellant then told Ms. Stephenson, whose identification had been taken, that he would kill her if she did not leave fifty dollars a day in a phone booth at 8th and C Streets, S.E. by pasting it to the back of the yellow pages.

Appellant presented an alibi defense. He offered testimony that he picked up one Claudelia Harris at 5:30 p. m. on July 22, 1975 at 18th and K Streets N.E. and took her to 1483 Newton Street, N.W., where the two were living. He stayed with her all night until he took her to school the next morning, on July 23 at approximately 8:00 a. m.

On cross-examination of appellant, the government questioned him as follows:

Q. Mr. Coombs, I would like to direct your attention to July 22nd, 1975, about 1:00 o'clock in the afternoon. Do you know where you were at that time?

A. Yes sir.

Q. Where were you?

A. I was at the Texaco gas station.

Q. I can't hear you.

A. I was at the Texaco gas station with the owner of the gas station, Robert Everhart.

\* \* \* \* \* \*

Q. Where were you at quarter of 2:00?

\* \* \* \* \* \*

A. There—I stayed there until about 5:30.

Q. What did you do at 5:30?

A. I went and picked up Claudelia Harris.

\* \* \* \* \* \*

Q. Where is Robert Everhart now? Do you know?

A. He sold the gas station. But he is working in another one in the same area. I don't know.

Q. Have you seen him recently?

A. No I haven't seen him. He sold the gas station. He had a heart attack.

Q. You think that you would find him if you had to?

A. Yes, sir. [Nodding]

At the close of the evidence, the trial judge informed counsel of the instructions he proposed to give the jury.[5] Over appel-

3. Immediately after the testimony of Ms. Stephenson and in his final charge to the jury, the trial court instructed the jury as to the limited purpose for which the evidence was introduced:

That evidence, ladies and gentleman of the jury, was admitted solely for your consideration of whether it tends to show that this defendant had the intent to commit the offenses with which he is now charged involving Valerie Wilson, whether this defendant had a scheme or design to commit the crime with which he is now charged involving Valerie Wilson, and finally, whether this defendant had a pre-disposition on his part to gratify his sexual desires by the incident involving Valerie Wilson.

4. Given our reversal of this conviction on other grounds, we need not discuss the propriety of

permitting the government to introduce evidence of a crime it had dismissed (for failure of its witness to show) in much the same manner as it would have done absent dismissal and under the guise of the *Drew* exception.

5. Appellant contends that the trial court gave the missing witness instruction on its own without a request from the government. One might infer from the record, although it is not entirely clear, that the government did not ask for the instruction, prior to the court's announcement that it would give the instruction; the government does not suggest in this court that it did so. There is authority that it is error for a judge to give a missing witness instruction *sua sponte. Brown v. United States,* 134 U.S.App.D.C. 269, 271 n. 4, 414 F.2d 1165, 1167 n. 4 (1969); *Egan v. United States,* 52 App.D.C. 384, 395–96, 287 F. 958, 969–70 (1923).

lant's objection, the judge charged the jury that since appellant had not brought Everhart to testify, the jury could infer that Everhart's testimony would be adverse to appellant.[6] In addition, the prosecutor in his summation to the jury commented on the missing witness.[7]

## II.

 The missing witness doctrine permits the trial court to instruct the jury that if a witness is "peculiarly available" to one of the parties and if the testimony of a particular witness would "elucidate the transaction" at issue, then the jury may infer that the testimony, if produced, would be unfavorable to the party who fails to produce the witness. *Graves v. United States,* 150 U.S. 118, 14 S.Ct. 40, 37 L.Ed. 1021 (1893); *Shelton v. United States,* D.C. App., 388 A.2d 859, 863 (1978); *Givens v. United States,* D.C.App., 385 A.2d 24 (1978). The doctrine also requires that before either counsel may comment on the absence of a witness, he or she must seek and obtain an advance ruling from the judge on the permissibility of the missing witness inference. *Givens v. United States, supra* at 27, reiterating the rule of practice set forth in *Gass v. United States,* 135 U.S.App.D.C. 11, 19–20, 416 F.2d 767, 775–76 (1969).

 The "peculiarly available" requirement of the missing witness rule does not permit an inference to arise from the failure of the defendant to call a witness unless there is a showing that the witness was not available to be subpoenaed by the government. *Brown v. United States,* 134 U.S. App.D.C. 269, 414 F.2d 1165 (1969). Although the District of Columbia Circuit Court refused to extend the doctrine of *Brown* to a case involving an alibi witness whose identity was learned for the first time at trial, *United States v. Stevenson,* 138 U.S.App.D.C. 10, 13–14, 424 F.2d 923, 926–27 (1970), the court in a subsequent decision saw no reason to pursue the issue in light of the District Court's Rule 87, promulgated after the .*Stevenson* decision. *See United States v. Young,* 150 U.S.App. D.C. 98, 106 n. 12, 463 F.2d 934, 942 n. 12 (1972). Super.Ct.Cr.R. 12.1, which is similar to the District Court's Rule 87, requires the defendant, upon written demand of the prosecutor, to serve upon the prosecutor a written notice of his intention to offer a defense of alibi which "shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi." Absent some extenuating circumstances, if a prosecutor has been armed with the name and

**6.** The full instruction was:

You will recall, too, ladies and gentlemen, that on July 23rd, if memory serves me correctly, that from sometime 10:00 in the morning until well past 2:00 in the afternoon, that the defendant testified that he was at a Texaco gas station owned by one Robert Everhart.

I say this, reminding you again, that it is your recollection of witness's testimony that controls and not mine. That is my recollection of what he testified to. In the jury room it is your recollection that controls.

But with respect to Mr. Robert Everhart, I want to say this to you. If a witness who could have given material testimony on an issue in this case was peculiarly within the power of one party to produce, and was not called by that party, and his absence has not been sufficiently accounted for or explained to you, then you may, if you deem it appropriate, infer that the testimony of the witness would have been unfavorable to the party which failed to call him.

However, no such inference should be drawn by you with regard to a witness who was equally within the power of either party to produce, or whose testimony would have been merely cumulative or immaterial.

The recollection of the judge as to the date of appellant's presence at the gas station was faulty since the testimony shows that the date was the 22nd (the date that Ms. Stephenson was accosted).

**7.** The prosecutor in his closing argument stated:

Bob Everhart, he says, at the Texaco station. Where is Bob Everhart? He says he could find him. The court will instruct you, ladies and gentlemen, that if you find that this Bob Everhart was available to this man, as he admitted that he was, and if he failed to bring him in here to testify, you can infer that Mr. Everhart's testimony would be adverse to his position.

address of such a witness, the government, of course, would not be in a position to suggest that the witness was so peculiarly available to the defendant as to permit the invocation of the missing witness inference.

█ In this case, the prosecutor had the opportunity to seek the name and address of any alibi witnesses pursuant to our Super.Ct.Cr.R. 12.1.[8] Absent a proffer, let alone a showing by the government as to why it should not have been expected to avail itself of that opportunity, we are unable to find in this case that the witness was available to appellant but not to the government. It was therefore error to give the missing witness instruction.[9] *See Brown v. United States, supra,* 134 U.S. App.D.C. at 271–72, 414 F.2d at 1167–68; *Wynn v. United States,* 130 U.S.App.D.C. 60, 64–65 & n. 23, 397 F.2d 621, 625–26 & n. 23 (1967).

Moreover, it was error here to give the missing witness instruction for yet another reason. If the witness could have elucidated any transaction at all, he could have done so only with respect to the events surrounding the crimes committed against Ms. Stephenson—crimes with which appellant was not charged but which were admitted only for the limited purposes outlined in *Drew v. United States, supra.* It bears reminding that the *Drew* doctrine is an exception to the well-established principle of long-standing in our law "that, upon the trial of an accused person, evidence of another offense, wholly independent of the one charged, is inadmissible." *United States v. Bussey,* 139 U.S.App.D.C. 268, 270, 432 F.2d 1330, 1332 (1970) *quoting from Bracey v. United States,* 79 U.S.App.D.C. 23, 25, 142 F.2d 85, 87, *cert. denied,* 322 U.S. 762, 64 S.Ct. 1274, 88 L.Ed. 1589 (1944).

Thus in *Harris v. United States,* D.C.App., 366 A.2d 461, 463–64 (1976), we outlined the sensitive balancing process that is required before evidence-of-other-crimes may be admitted:

> It is not enough that collateral transactions fit within one of the recognized [Drew] exceptions; there must be a further showing that the introduction of such evidence is necessary, and that its potential for prejudice and confusion is outweighed by its probative value. *United States v. Gay,* 133 U.S.App.D.C. 337, 339, 410 F.2d 1036, 1038 (1969), *cert. denied,* 400 U.S. 867, 91 S.Ct. 109, 27 L.Ed.2d 107 (1970). [Further citations omitted.]

We have extreme difficulty in concluding that the missing witness doctrine could be invoked under circumstances where the transaction to be elucidated is a totally collateral one, in itself inadmissible except under well-defined and limited circumstances. *Burgess v. United States,* 142 U.S.App.D.C. 198, 206, 440 F.2d 226, 234 (1970) states:

> The missing witness instruction is not evidence, but is concerned with the absence of evidence. While the context in which the question arises may clothe the missing witness with significance, there is the danger that the instruction permitting an adverse inference may add a fictitious weight to one side or another of the case. When thus an instruction is sought which in a sense creates evidence from the absence of evidence, the court is entitled to reserve to itself the right to reach a judgment as wisely as can be done in all the circumstances, even when the general guidelines based upon *Graves* are found to be supported by the evidence. [Footnotes omitted.]

---

8. We will not speculate, at this juncture, as to whether, had the prosecution made a demand under Rule 12.1, the defendant would have listed Everhardt as an alibi witness.

9. We do not have on the record before us the issue, whether, even where the witness is physically available to both sides, the inference attaches and the instruction can be given because

the party is in a special relation to the witness and the witness could be expected to be hostile to the other party. *See Hale v. United States,* D.C.App., 361 A.2d 212, 216 (1976) (girlfriend); *United States v. Young, supra,* 150 U.S.App. D.C. at 106–07, 463 F.2d at 942–43 (relatives); *Milton v. United States,* 71 U.S.App.D.C. 394, 397, 110 F.2d 556, 559 (1940) (the classic example of employer-employee).

*Accord, Givens v. United States, supra,* 385 A.2d at 26.

To permit its application under such circumstances would place an intolerable burden on a defendant. As the Supreme Court noted in *Graves, supra,* 150 U.S. at 121, 14 S.Ct. at 41:

> But this presumption [now generally expressed as authorizing a permissible inference] does not apply to every fact in the case which it may be in the power of the defendant to prove. He is not bound to anticipate every fact which the government may wish to show in the course of the trial, and produce evidence of that fact.

Having concluded that it was error for the court to give the missing witness instruction,[10] we must still decide whether it amounted to prejudicial error. In *Haynes v. United States,* D.C.App., 318 A.2d 901, 903 (1974), we held that where the credibility of the defendant was crucial, the error would be prejudicial. *Accord, Brown v.*

*United States, supra,* 134 U.S.App.D.C. at 272, 414 F.2d at 1118; *United States v. Young, supra,* 150 U.S.App.D.C. at 104–05 n. 9, 463 F.2d at 940–41 n. 9. The crucial issue in this case was the identity of the person who raped and robbed Ms. Wilson. Appellant's testimony was that he was at home with his girlfriend, while Ms. Wilson and Mr. Graham testified that appellant was the one who participated in these crimes. In this situation, we cannot say that comment on the missing witness, which may have damaged appellant's credibility with the jury, was harmless error.

The judgment appealed from is therefore

*Reversed and the cause remanded for a new trial.*

---

**10.** More basically, we would note that it was error for the trial court to permit the line of inquiry which disclosed the existence of a missing witness to the collateral transaction. On direct, appellant offered an alibi defense in response to the transaction for which he was charged. On cross-examination by the government, defense counsel objected to questioning going to the collateral crime as beyond the scope of direct examination. The trial court overruled the objection.